852 A.2d 1168

COMMONWEALTH of Pennsylvania, Appellee,

v.

Johnny Ray HARRIS, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 7, 2003.

Decided June 23, 2004.

380

Jules Epstein, Esq., for Johnny Ray Harris.

Hugh J. Burns, Esq., Amy Zapp, Esq., Philadelphia, for the Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice NIGRO.

Appellant Johnny Ray Harris appeals from that part of the order of the Court of Common Pleas of Philadelphia County denying his claims related to the guilt phase of his trial in his petition filed pursuant to the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. For the reasons set forth below, we affirm.

On August 3, 1992, at approximately 10:00 p.m., Appellant and Ahmeen Mustafa arrived at R's Variety Store in Philadelphia. The owner of the store, Owen Edwards, and two of his employees, Ronald Caison and Steven Parrish, were preparing to leave work when Appellant and Mustafa entered the store. Without warning, Appellant shot Edwards with a .357 caliber revolver, and Edwards collapsed. Appellant then fired five more shots at Edwards, killing him. After Appellant spit on Edwards, he and Mustafa went through Edwards' front pockets to retrieve cash. The men fled, and Caison, who had managed to escape from the line of fire, called 911.

Following a jury trial, Appellant was found guilty of first-degree murder, robbery, criminal conspiracy, two counts of recklessly endangering another person, and possessing an instrument of crime.[1] At the penalty hearing, the jury determined that the one aggravating factor it found, that Appellant committed the killing in the perpetration of a felony,[2] outweighed the one mitigating factor it also found, that Appellant had no significant history of criminal convictions.[3] Accordingly, the jury returned a verdict of death.[4,5] After denying post-

1. Appellant and Mustafa were tried together in this, their third, trial on charges arising from these events, as the first two trials resulted in hung juries.

2. 42 Pa.C.S. § 9711(d)(6).

3. 42 Pa.C.S. § 9711(e)(1).

4. 42 Pa.C.S. § 9711(c)(4).

5. The jury convicted Mustafa of murder in the second degree, criminal conspiracy and robbery, and sentenced him to life imprisonment. The Superior Court affirmed the judgment of sentence. *Commonwealth v. Mustafa*, 453 Pa.Super. 684, 683 A.2d 313 (1996)(Table).

sentence motions, the trial court formally imposed the death sentence against Appellant.

Appellant obtained new counsel and filed a direct appeal to this Court, which affirmed Appellant's judgment of sentence on November 20, 1997. *Commonwealth v. Harris*, 550 Pa. 92, 703 A.2d 441 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998). On December 11, 1998, Appellant filed a pro se PCRA petition, alleging ineffective assistance of counsel during both the guilt and penalty phases of his trial. After counsel was appointed, Appellant filed an amended petition on October 21, 1999, and supplements to the amended petition on November 23, 1999 and March 10, 2000.

On October 25, 2000, the PCRA court entered an order granting an evidentiary hearing on Appellant's claims that counsel had been ineffective during the penalty phase, but denying relief on the guilt-phase claims.[6] This timely appeal followed.[7]

In his brief to this Court, Appellant first contests a ruling made by the trial court precluding Appellant's counsel from questioning Caison about information contained in certain reports regarding his alleged history of mental illness.[8] Apparently, Appellant's counsel used certain criminal and mental health records in Appellant's and Mustafa's first and second trials in an effort to impeach Caison with respect to his ability to accurately perceive, recall, and communicate the events of the night of the murder. *See* N.T., 11/30/93, at 64. The Commonwealth, in order to prevent Appellant's counsel from using these records during the instant trial, presented a

---

**6.** Following the evidentiary hearing, on September 12, 2002, the PCRA court granted Appellant a new penalty hearing. The Commonwealth has not appealed from that decision.

**7.** This Court has jurisdiction to directly review the denial of post-conviction relief in death penalty cases pursuant to 42 Pa.C.S. § 9546(d).

**8.** Appellant's claim appears to be based on several documents attached to his brief to this Court, namely: an excerpt from the notes of testimony from an unidentified prior proceeding, two mental health evaluations administered by the Court of Common Pleas Adult Probation and Parole Department, and a pre-sentence report. *See* Appellant's Bf., at Exhibit B.

motion in limine requesting the court to preclude Appellant's counsel from cross-examining Caison with information contained in those records. *See id.* at 57–58, 63–67. The court granted the Commonwealth's motion, seemingly on the grounds that such information was irrelevant and/or hearsay. *Id.* at 63.

■ Appellant now argues to this Court that the trial court's ruling deprived him of his Sixth Amendment right to confront Caison as an adverse witness. However, given that this claim is one of straight trial court error, and that Appellant failed to raise this issue on direct appeal, it has been waived.[9,10] *See* 42 Pa.C.S. § 9544(b) ("an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167, 1176 (1999) (finding that post-conviction relief is not available to the extent that the appellant

9. Appellant attempts to avoid waiver of his claims in general by arguing that they are reviewable under this Court's "relaxed waiver" doctrine. However, this Court has held that "relaxed waiver" no longer applies in capital post-conviction appeals. *See Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1998). While this Court has also held that Albrecht is to be applied retroactively, *see Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 303 (1999), we note that Appellant filed his PCRA petition and amended PCRA petition after this Court issued *Albrecht. See also Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935, 941 (2001) (citing cases where this Court has held that Albrecht applies retroactively to PCRA appeals where PCRA petition was filed prior to this Court's decision in *Albrecht*).

10. To the extent that Appellant's brief could be read as suggesting that appellate counsel was ineffective for failing to raise a claim that the trial court's ruling violated Appellant's confrontation clause rights, *see* Appellant's Brief, at 44 (claiming generally that appellate counsel was ineffective per se for failing to raise viable record-based claims), we note that Appellant did not raise such a claim in his PCRA petition. *See* Amended Petition for Post–Conviction Relief, at ¶¶ 1–10; Memorandum of Law in Support of Amended Petition for Post–Conviction Relief, at 1–22. Indeed, Appellant did not challenge the trial court's ruling at all in his PCRA petition. *Id.* Therefore, this Court cannot review such a claim, even if properly presented to this Court. *See Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935, 941 n. 4 (2001) (appellate court will not consider issue unless it is properly presented in post-conviction petition).

asserted general claims of trial error that were not preserved at trial and raised on direct appeal).

Inside this waived claim regarding the trial court's ruling, Appellant also apparently attempts to advance a claim of trial counsel's ineffectiveness as it relates to the ruling. Appellant then proceeds to raise additional claims that trial counsel was ineffective for: (1) committing further errors relating to the testimony of Ronald Caison; (2) failing to object to the prosecution's use of inadmissible "habit" evidence; and (3) entering into an erroneous stipulation before the jury. Appellant also asserts at the end of his brief that direct appellate counsel was ineffective for failing to raise the above claims.

In *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651 (2003), this Court explained how we had recently clarified the requirements for preserving a PCRA claim challenging the effectiveness of counsel in *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014, (2003):

> [We explained in McGill that] [w]hen a court is faced with a "layered" claim of ineffective assistance of counsel, the only viable ineffectiveness claim is that related to the most recent counsel, appellate counsel. See McGill at 1022. In order to preserve a claim of ineffectiveness, a petitioner must **"plead,** in his PCRA petition,"" that appellate counsel was ineffective for failing to raise all prior counsel's ineffectiveness. *Id.* Additionally, a petitioner must **"present** argument on, i.e. develop each prong of the [ineffectiveness] test"" as to appellate counsel's deficient representation. *Id.* "Then, and only then, has the petitioner preserved a layered claim of ineffectiveness for the court to review...." *Id.*
>
> The opinion in *McGill* then elaborated on how a petitioner must present his claim of layered ineffectiveness. We explained that consistent with *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203 (2001) a petitioner must prove the three prongs of appellate counsel's ineffectiveness. *[McGill]* at 1022–23. The first prong of the ineffectiveness analysis as to appellate counsel's conduct—arguable merit— is best understood as a "nested" argument. In essence, to

demonstrate that a layered claim of appellate counsel's ineffectiveness has arguable merit, the petitioner is required to set forth all three prongs of the *Pierce* test as to trial counsel's action or inaction. *Id.* If the petitioner does not satisfy any of the three prongs as to trial counsel's ineffectiveness, he will have failed to establish an ineffectiveness claim, since a claim of appellate counsel ineffectiveness is merely a derivative claim related to trial counsel's ineffectiveness. *Id.* If, however, the arguable merit prong of appellate counsel's ineffectiveness is established, *i.e.,* the petitioner has established trial counsel's ineffectiveness, the inquiry proceeds to the remaining two prongs of the *Pierce* test as it relates to appellate counsel's ineffectiveness. *Id.* at 1023–24.

*Rush,* 838 A.2d at 656 (emphasis in original).

Thus, pursuant to *McGill,* we must determine as a threshold matter whether Appellant has preserved his claims. First, Appellant has sufficiently pled his ineffectiveness claims given that he has, as noted above, asserted that appellate counsel was ineffective for failing to raise his claims regarding trial counsel's ineffectiveness. *See id.* As for Appellant's presentation of his argument as it relates to appellate counsel, Appellant has at least made reference in his PCRA petition to all three prongs of the *Pierce* test as it relates to his appellate counsel. PCRA Pet., at 20–21. However, Appellant's brief to this Court fails to develop any meaningful argument on the third prong of the *Pierce* test, *i.e.,* how appellate counsel's representation prejudiced Appellant. While such pleading deficiencies may be cured with a remand, *see McGill,* 832 A.2d at 1024 ("a remand to the PCRA court may be appropriate for cases currently pending in the appellate courts where the petitioner has failed to preserve, by pleading and/or presenting, a layered ineffectiveness claim in a manner sufficient to warrant merits review"), we have made clear that such a remand is not necessary where the petitioner "has not carried his *Pierce* burden in relation to the underlying claim of trial counsel's ineffectiveness, since even if the petitioner were able to craft a perfectly layered argument in support of his claim

[with respect to appellate counsel], the petitioner's claim would not entitle him to relief." *Rush,* 838 A.2d at 657–58. Given our determination that Appellant has failed to meet his burden of establishing that trial counsel was ineffective, as discussed below, no remand is warranted here.

■ The law presumes that counsel has rendered effective assistance. *Commonwealth v. Balodis,* 560 Pa. 567, 747 A.2d 341, 343 (2000). Therefore, to succeed on a claim that counsel was ineffective, an appellant must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the act or omission in question; and (3) he suffered prejudice as a result of counsel's deficient performance; *i.e.,* there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Commonwealth v. Pierce,* 567 Pa. 186, 786 A.2d 203, 213 (2001). Trial counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Smith,* 539 Pa. 128, 650 A.2d 863, 866 (1994). In addition, where an appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone. *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 357 (1995) (citing *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ Appellant's first allegation of ineffective assistance of counsel relates to the trial court's ruling, discussed above, which precluded trial counsel from questioning Caison about information contained in certain reports regarding his alleged history of mental illness. While Appellant's argument concerning counsel's ineffectiveness in this regard is both underdeveloped and unclear, Appellant appears to be arguing that trial counsel was ineffective for failing to impeach Caison with information contained in these records concerning Caison's history of both mental illness and drug abuse. This claim, to the extent that it is properly presented to this Court, fails in both respects. First, given that the trial court explicitly precluded Appellant's counsel from introducing information in these records pertaining to Caison's mental health, trial coun-

sel clearly cannot be held ineffective for failing to do so. Second, with respect to Appellant's argument that counsel should have impeached Caison with evidence of his drug abuse history contained in the records, we note that such impeachment would not have been proper. While this Court has consistently held that "intoxication on the part of a witness at the time of an occurrence about which he has testified is a proper matter for the jury's consideration," *Commonwealth v. Small*, 559 Pa. 423, 741 A.2d 666, 677 (1999) (citations omitted), the jury should *not* consider for impeachment purposes the use of drugs or alcohol at other irrelevant times. *See id.; see also Commonwealth v. Drew*, 500 Pa. 585, 459 A.2d 318, 321 (1983); *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956, 961 (1978). Here, counsel did in fact question Caison about his use of drugs on the day of the murder, which, under *Small*, was the only time-frame relevant to this subject. *See* N.T., at 12/1/93, at 155 ("at the time that this incident happened, were you under the influence of either marijuana that had been in the store or any cocaine?"); *id.* at 179 (asking whether Caison had smoked "any marijuana from any source at all the day that this incident happened?"). Thus, Appellant's claim that trial counsel should have also asked Caison about the information contained in these records concerning his general history of drug use fails, given that such information, which pertained to Caison's conduct at times *other* than on the evening of the murder, was irrelevant and therefore inadmissible. *See id.*

 In his next claim, Appellant argues that trial counsel was ineffective for failing to impeach Caison with prior inconsistent statements that he made to the police on the night of the murder. Specifically, Appellant argues that Caison's statement to Philadelphia Police Officer Sean Cobette, the initial officer on the scene, that the murder was committed by two "unknown males," one "wearing an orange hat ... and also wearing sunglasses," directly contradicted his testimony at trial that he recognized Appellant at the time of the shooting. According to Appellant, he "was failed by trial counsel, who never let his jury know" about this inconsistency. Appellant's Bf., at 35. This claim fails.

While Appellant is correct that trial counsel never specifically questioned Caison about this statement to Officer Cobette, trial counsel thoroughly questioned Caison about the substantially identical information Caison gave to the 911 operator. Specifically, counsel asked Caison why he had not told the 911 operator that Appellant was the individual who had shot Edwards:

Q: Why did you say two black men wearing white shorts and one was wearing shades? Why didn't you just say John Harris, I know who he is? ... Did you know my client's name was John Harris?

A: No.

Q: You just knew his name was John?

A: Yes.

Q: Why didn't you tell the police John had just shot your boss?

A: I don't know why I didn't say it. They didn't ask me what his first name was.

Q: I'm sorry?

A: The operator didn't ask me what the name was.

Q: So you didn't volunteer it?

A: They asked for it from homicide, what the name was.

Q: When you called, you didn't think it was important to tell the police who it was?

A: It was important, they asked me the information at homicide.

N.T., 12/1/03, at 153–54. In addition, later in his cross-examination of Caison, trial counsel again asked Caison why he failed to tell the 911 operator that he recognized the shooter:

Q: According to this transcript, the operator asked you, "can you tell me what this person was wearing," and you said one had an orange hat on. Do you remember saying that?

A: Yes.

Q: And then the operator said, he had on an orange," and then the caller said, "and shades on." The operator said, orange hat and shades," and then you said "two guys, two guys." Why didn't you tell the police who they were if you knew who they were?

A: I said before, it was a shock to me. . . .

*Id.* at 161. Given that the information that Caison provided to the 911 operator was nearly identical to the information he gave to Officer Cobette, and that Appellant's trial counsel thoroughly cross-examined Caison about his failure to identify Appellant in his 911 call, it is clear that the jury was aware of Caison's failure to identify Appellant immediately after the shooting. In light of these circumstances, Appellant has failed to show how he was prejudiced by counsel's failure to cross-examine Caison about the similar statement he made to Officer Cobette, and his ineffectiveness claim necessarily fails. *See Travaglia,* 661 A.2d at 357 (where appellant has not met prejudice prong of ineffectiveness standard, ineffectiveness claim may be dismissed on that basis alone).

 Appellant next contends that trial counsel was ineffective for failing to object to the Commonwealth's introduction of several out-of-court statements by Caison that were consistent with his testimony that he recognized Appellant as the shooter.[11] Appellant appears to argue that these statements were improperly admitted because they were hearsay and failed to qualify under the "prior consistent statements" exception to the hearsay rule. We disagree.

Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes under the Pennsylvania Rules of Evidence in two instances. First, it is admissible if "the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of fabrication, bias,

11. Although the PCRA court's 1925(a) Opinion appears to deal with *different* prior consistent statements than the ones at issue in Appellant's claim here, a review of the record reveals that Appellant raised the present claim in his PCRA petition, and not the claim disposed of by the PCRA court. *See* Amended Petition for Post–Conviction Collateral Relief, at 10–11.

improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose." Pa.R.E. 613(c)(1). Second, it is admissible if "the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness' denial or explanation." Pa.R.E. 613(c)(2).

Here, on direct examination, Caison stated that he recognized Appellant as the shooter on the night of the shooting and, as discussed above, Appellant's trial counsel then questioned Caison on cross-examination about why he had not told the 911 operator that Appellant was the shooter. *Id.* at 153–154. To rehabilitate the credibility of Caison's testimony that he had recognized Appellant as the shooter, the Commonwealth asked Caison on redirect examination about a statement Caison made to police just one hour after the shooting occurred, in which he identified Appellant as the shooter. N.T., 12/2/1993, at 19–21. Further, the Commonwealth introduced evidence that Caison had also named Appellant as the shooter when he testified in prior proceedings. *Id.* at 20–21.

 Appellant appears to argue that counsel should have objected to these statements as they were not admissible as prior consistent statements under the first subpart of Rule 613(c) because the statements postdated Appellant's prior inconsistent statement, *i.e.*, Caison's statement to the 911 operator neglecting to name Appellant as the shooter. This argument, however, fails to recognize that regardless of their admissibility under Rule 613(c)(1), these statements were nonetheless admissible under the second subpart of that Rule, 613(c)(2), which provides that prior consistent statements are admissible to rebut a charge of having made a prior inconsistent statement, regardless of the timing. As the Official Comment to Rule 613 explains:

Pa.R.E. 613(c)(2) is arguably an extension of Pennsylvania law, but is based on the premise that when an attempt has been made to impeach a witness with an alleged prior

inconsistent statement, a statement consistent with the witness' testimony should be admissible to rehabilitate the witness if it supports the witness' denial or explanation of the alleged inconsistent statement. Where there has been a denial of the alleged inconsistent statement, *the consistent statement should almost invariably be admitted, regardless of its timing.*

Pa.R.E. 613, Official Comment (emphasis added); *see also Commonwealth v. Berrios*, 495 Pa. 444, 434 A.2d 1173, 1177 (1981) (quoting McCormick, Evidence, § 49 (1954)) ("in an effort to dispel the effect of prior inconsistent statements it is possible to rehabilitate a witness by showing that he made prior statements, *antedating the prior inconsistent statement,* and consistent with his testimony at trial" (emphasis added)). Thus, contrary to Appellant's suggestion, the Commonwealth was permitted to introduce the out-of-court statements by Caison in order to rehabilitate his testimony that he knew Appellant was the person who shot Edwards.[12] *See id.* Accordingly, trial counsel was not ineffective for failing to object to this line of questioning.

 In his final claim regarding Caison's testimony, Appellant argues that trial counsel was ineffective for failing to request a jury instruction to explain the significance of the evidence introduced that at the time of Edwards' murder, Caison was on parole or probation and had criminal charges pending against him. According to Appellant, the jury should have received a specific instruction about how to consider this information in evaluating Caison's credibility. We disagree.

12. Moreover, to the extent that Appellant is attempting to argue that Caison's prior consistent statements were inadmissible under subpart (c)(1) of Rule 613, Appellant misstates the law regarding that part of the Rule, which provides that where the current testimony of a witness is alleged to be recently fabricated, a prior consistent statement may be admissible only if that statement was made before the motive for fabrication arose. *See Commonwealth v. Hutchinson*, 521 Pa. 482, 556 A.2d 370, 372 (1989) (noting that the statement must have been made before any corrupt motive has arisen) (citations omitted). The Rule does not require, as Appellant suggests, that the statement have been made before the pertinent prior inconsistent statement.

In *Commonwealth v. Thompson*, 559 Pa. 229, 739 A.2d 1023 (1999), this Court found arguable merit in the appellant's claim that trial counsel should have sought an instruction informing the jury that it was permitted to find that a witness who had pending criminal charges against him was biased in favor of the Commonwealth. Nevertheless, we ultimately determined that the appellant had not been prejudiced by his trial counsel's omission because: (1) trial counsel suggested in his closing remarks that the witness's statement was predicated on a desire to curry favor with the police; (2) the trial court extensively instructed the jury regarding the proper legal principles regarding a witness's credibility; and (3) the witness's credibility was extensively impeached by trial counsel. *Id.* at 1031.

As in *Thompson*, here too we find that Appellant has failed to demonstrate that he was prejudiced by the absence of an instruction specifically addressing how Caison's criminal record related to his credibility. *See Pierce*, 786 A.2d at 213. During cross-examination, Appellant's trial counsel questioned Caison about the fact that he had been on probation or parole and had pending criminal charges at the time of the shooting, and suggested that he had received "a deal" in exchange for his testimony against Appellant:

Q: Mr. Caison, I believe when Ms. Fairman questioned you earlier, she asked you whether you had made any deal with the police or agreement with the police about your charges in relation to whether or not you were going to testify in this case. Do you remember her asking you that?

A: Yes.

Q: You testified there isn't any deal; is that correct?

A: That's correct.

Q: When you spoke to the police immediately after this incident, were you afraid that you were going to be arrested for selling marijuana, for admitting that you were selling marijuana?

A: No.

Q: At the time that this happened, if you had been arrested for selling marijuana, would that not have been a violation of your probation?

A: Yes.

Q: You had no fear about that?

A: No.

Q: But in fact, you never were accused of violating your probation for these marijuana sales; is that correct?

A: That's correct.

Q: You're smiling, but that's not a deal—

A: I'm sorry.

Q: Is that a deal or not?

A: It's not a deal.

Q: Nothing to do with it?

A: No.

N.T., 12/1/93, at 162–63. Thus, the jury was clearly made aware of the possibility that Caison had agreed to testify against Appellant in order to receive favorable treatment from the Commonwealth. Moreover, the trial court's general jury charge thoroughly instructed the jury to consider the possibility of bias in evaluating the credibility of each witness. Specifically, the court stated:

You should consider whether the [witness] has any interest in the outcome of the case or has friendship for or animosity toward any other persons concerned in the case; you should consider the behavior of the witness on the witness stand; the witness's demeanor; the witness's manner of testifying; and whether the witness shows any bias or prejudice that might color the witness's testimony.

N.T., 12/3/1993, at 8. Given this instruction, and the fact that the jury was aware of Caison's potential bias stemming from his pending charges, Appellant has failed to show how he was prejudiced by trial counsel's failure to request a specific instruction explaining the significance of Caison's criminal record as it related to his credibility. *See Thompson*, 739 A.2d

at 1031. Therefore, trial counsel was not ineffective in this regard. *See Travaglia*, 661 A.2d at 357.

In his next claim, Appellant asserts that trial counsel was ineffective for failing to object to the testimony of Parrish, one of the employees working at R's Variety Store on the evening of the murder, that Edwards, the owner of the store, usually collected money from the cash register each night before closing. This claim fails.

Pennsylvania Rule of Evidence 406 provides that:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Pa.R.E. 406. For evidence of habit to be admissible, the habit must have occurred with sufficient regularity to make it probable that it would be carried out in every instance or in most instances. *Baldridge v. Matthews*, 378 Pa. 566, 106 A.2d 809, 811 (1954) (citations omitted).

Here, Parrish testified that, although he had only worked at the store for one week when the murder occurred, it was Edwards' custom during that week to return to the store at night to close up. N.T., 12/1/93, at 23. Specifically, Parrish stated the following:

Q: Why did [Edwards] come around that evening?

A: Close up the [s]tore.

Q: Was that something that was his custom? Would he do that every day?

A: Yes.

Q: In the week that you worked there, was that his habit?

A: Yes, by what I could see.

. . .

Q: What happened to the cash register? Was that your responsibility?

A: What do you mean?

Q: The money in the cash register at the end of the day?

A: He usually pick that up.

Q: Did you see him pick it up on that day?

A: I don't remember.

. . .

Q: Why did [Edwards] come to the store every day at closing?

A: Well, to pick up the money at the end of the day.

*Id.* at 23–25. Mustafa's counsel objected to Parrish's testimony regarding what Edwards "usually did," and the court sustained the objection. *Id.* at 24. Counsel then objected to the Commonwealth's next question asking Parrish if he saw Edwards take the money out of the cash register every day that he worked at the store. *Id.* This time, the court allowed Parrish to answer the question, stating, "the objection is overruled. I'll permit the district attorney to question as to business practices." *Id.*

Appellant essentially argues that his trial counsel was ineffective for failing to object to this testimony because Parrish did not personally witness Edwards pick up the money with sufficient regularity to permit the jury to infer that it was Edwards' "habit" or "business practice" to do so. This claim is a bit curious, as an objection was made to this testimony, albeit by Appellant's co-defendant's counsel. In any event, to the extent that Appellant is suggesting that his counsel should have also objected, this claim fails, as we agree with the PCRA court that Parrish's testimony was properly admitted. As noted above, Parrish testified that during the week that he had worked at the store, he witnessed Edwards pick up the money at the end of the night when the store would close. We see no abuse of discretion in the trial court's determination that this practice occurred with "sufficient regularity" to make it probable that it occurred on the night of the murder as well. *See Matthews*, 106 A.2d at 811 (hotel clerk's testimony that it was routine practice for hotel to require advance payment when guests register without luggage was admissible to show that defendant had luggage with him when he stayed

at the hotel). Thus, the trial court properly overruled Mustafa's counsel's objection relating to this testimony, and it cannot be said that Appellant's counsel was ineffective for failing to offer his own objection to its admission. *See Smith*, 650 A.2d at 866 (trial counsel is not ineffective for failing to raise a meritless claim).

■■■ In his next claim, Appellant argues that trial counsel was ineffective for entering into an erroneous stipulation before the jury. Appellant claims that the jury was told that he made "four statements" concerning the case, when these statements were actually made by Caison. According to Appellant, this error gave the jury the impression that Appellant had confessed to the crime charged. This claim fails.[13]

Here, during trial counsel's recross-examination of Caison, counsel asked whether Caison had ever mentioned to police that Appellant had spit on Edwards after shooting him. N.T., 12/2/93, at 23. The Commonwealth objected, and a sidebar conference followed in which counsel for both defendants and the Commonwealth agreed to stipulate to the fact that Caison had never mentioned that Appellant spit on Edwards in any of his statements to the police. *Id.* In addition, during this sidebar conference, counsel for all parties also agreed to stipulate that Caison never told the police that he took a gun from Edwards and put it back on the shelf, but that he had testified to this fact in four previous proceedings. *Id.* at 24.

Following the sidebar conference, the court excused Caison, and informed the jury that the Commonwealth and the defense had entered into an additional stipulation. *Id.* at 26. At this time, the Commonwealth stated the following:

13. We note that in his initial brief to this Court, Appellant failed to provide this Court with the relevant facts and law necessary to address this claim, as he not only failed to specify precisely what it was that counsel stipulated to, but also failed to point to where in the record counsel made this alleged stipulation. However, in his Reply Brief, Appellant indicated where in the record the stipulation occurred. While we disapprove of Appellant's failure to adequately present this claim in his initial brief, we will nevertheless review the claim based on the citations provided in his Reply Brief.

Your honor, we have agreed on a stipulation upon review of all of the four written statements that **the defendant** gave to the police, that nowhere in those statements does he say specifically that he took a gun from Edwards' body and placed it in the back, although he has testified to it on four subsequent occasions that you've heard referred to throughout this trial. We will further stipulate that he did not specifically say in the statements regarding the crime that John spit on Edwards at that point.

*Id.* (emphasis added). Thus, when the prosecutor recited the stipulation to the court, she misspoke, and referred to statements made by "the defendant" rather than by Caison. Apparently, neither the court nor counsel for the defendants noticed the prosecutor's mistake, and the error was left uncorrected.

Appellant argues that "[t]he erroneous stipulation could only generate speculation and diminish appellant's privilege against self-incrimination by inviting jurors to conclude that he had made statements with knowledge of the criminal event." Appellant's Bf., at 42. However, we cannot agree with Appellant that the jury was misled by the prosecutor's misstatement. First, the stipulation referred to statements that the jury already knew to have been made by Caison. At this point in the trial, the jury was well aware that Caison had given four statements to the police, that he had just testified that he had taken a gun from Edwards' body and placed it in the back of the store, and that he had also just testified that Appellant spit on Edwards after shooting him. Moreover, the jury heard the stipulation right after Caison's testimony. Finally, counsel for Appellant addressed the subject of the stipulation during her closing argument to call into question the credibility of *Caison,* not the credibility of her client. *See* N.T., 12/2/93, 90–95. Given these circumstances, we agree with the PCRA court that Appellant has not shown that he was prejudiced by the prosecutor's misstatement, and thus that trial counsel cannot be said to have given ineffective representation for failing to correct it. Accordingly, this claim fails. *See Pierce,* 786 A.2d at 213 (stating that in order to

succeed on an ineffectiveness claim, an appellant must demonstrate that the underlying claim is of arguable merit).

 In his final claim, Appellant contends that the PCRA court below erred in refusing to grant him at least an evidentiary hearing on the above guilt-phase claims. However, as the above discussion makes clear, no hearing was necessary to dispose of Appellant's guilt-phase claims as those claims are clearly without merit. *See* Pa.R.Crim.P. 907 (under the PCRA, a court may dismiss a petition for post-conviction relief without a hearing where there are no genuine issues of material fact, the defendant is not entitled to post-conviction relief, and no purpose would be served by further proceedings); *see also Commonwealth v. Pirela,* 556 Pa. 32, 726 A.2d 1026, 1037 (1999). Thus, it cannot be said that the PCRA Court abused its discretion in granting Appellant a hearing on his claims alleging trial counsel ineffectiveness at the penalty phase, but dismissing Appellant's guilt-phase claims without a hearing. *See Commonwealth v. Carpenter,* 555 Pa. 434, 725 A.2d 154, 170 (1999) ("judge may dispose of only part of a motion without a hearing by ordering dismissal of or granting relief on only some of the issues raised, while ordering a hearing on the other issues.").

Having found that Appellant is not entitled to relief on any of his claims related to the guilt phase of his trial, we affirm that part of the order of the PCRA court.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I am unable to join fully the majority's treatment of several issues in this appeal and write to explain my primary difference. This concern is with the majority's approach to Appellant's claims relating to the Commonwealth's sole identification witness, Ronald Caison, and in particular, those centered on the fact that the jury did not hear evidence in the guilt phase of trial concerning Caison's assertedly impaired mental health condition.

The majority addresses this claim in a fairly cursory manner, merely noting that counsel cannot be deemed ineffective for failing to introduce records that the trial court excluded from evidence. *See* Majority Opinion, *slip op.* at 7. In his statement of questions presented, however, Appellant expressly frames the issue in broader terms, as follows:

> Was not Appellant deprived of the effective assistance of counsel, a fair trial, and his right to confront witnesses, under the Sixth and Fourteenth Amendments and the Pennsylvania Constitution, when *trial counsel failed to properly establish the predicate necessary for questioning Ronald Caison*, the sole identification witness, with his [Caison's] substantial psychiatric ... history."

Brief of Appellant at 5, 22 (emphasis added).[1] While the development of the issue on such terms in the body of Appellant's brief is sparse, there are multiple references to the assertion of trial counsel ineffectiveness for failing to secure independent proof of mental infirmity on Caison's part. *See, e.g.,* Brief of Appellant at 13, 22, 31 n. 19; *see also id.* at 33 (same, but focused primarily on the claim related to trial court's asserted failure to develop evidence concerning Caison's drug usage). As such, I believe that Appellant has done enough to put the issue before this Court on such terms, particularly where he has not been afforded an evidentiary hearing at which to submit his proofs. I make this point only because I believe that, although form is certainly important, particularly in the aftermath of *McGill*, in which the Court implemented a fairly formalistic set of requirements for layered claims in subsequent cases,[2] I understand the Court's concomitant commitment was to focus more closely on substance with respect to those claims, such as these, that were advanced prior to *McGill's* issuance. *See generally McGill*, 574 Pa. at 590–91, 832 A.2d at 1024.

1. Appellant also separately referenced his layered claim of appellate counsel's ineffectiveness in the statement of questions presented.

2. As is fairly clear from the cases preceding *McGill*, its requirements reflect a compromise of positions advanced by various Justices as to the appropriate threshold presentation required to secure appellate, merits review.

In my view, the weakness of this claim lies in Appellant's failure, even at the post-conviction stage, to proffer testimony or other evidence that would establish impairment beyond that which was noted in the records derived from Caison's sentencing proceedings, which were apparently before the trial court at the time that it made its ruling. *See* N.T., at 66. A post-conviction petitioner, however, has an obligation to supply an adequate proffer in order to secure entitlement to an evidentiary proceeding. *See generally* 42 Pa.C.S. § 9545(d) ("Where a [post-conviction] petitioner requests an evidentiary hearing, the petitioner shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony."). As Appellant has offered to prove nothing beyond what the trial court ruled inadmissible on grounds of relevance and hearsay, and did not (in his post-conviction pleadings) raise a derivative claim to preserve any claim of trial court error in terms of such ruling, he failed to establish a basis to support either an evidentiary hearing or relief.

Additionally, it appears to me that the trial court's ruling was within the boundaries of its discretion, since although that the records from Caison's sentencing proceedings establish some mental health difficulties, primarily along the lines of a personality disorder, they are unspecific in terms of the effect of these difficulties on Caison's ability to observe and recall. *Accord Commonwealth v. Rizzuto,* 566 Pa. 40, 62–64, 777 A.2d 1069, 1082–83 (2001) (framing the essential inquiry concerning the admissibility of witness mental-health evidence in terms of the witness's ability to observe and remember). In absence of some offer of explanatory, expert testimony, a fair degree of speculation would have been required to close the gap between the proffered records and the witness's capacity in the relevant respects, thus implicating the trial court's discretion to disallow the references. *Compare, e.g., Commonwealth v. Mason,* 358 Pa.Super. 562, 569–71, 518 A.2d 282, 285–86 (1986) (holding that the trial court erred in precluding cross-examination of a crucial Commonwealth witness about his history of

mental illness, where, in the months between the crime and trial, the witness was hospitalized and diagnosed with schizophrenia, paranoid type with depression, and mild retardation, given the timing of the hospitalization and the nature of the diagnosis). At bottom, in the absence of a specific advancement of relevant and sufficient mental health questions relating to a witness's testimony, a trial court has no obligation to permit trial proceedings to devolve into collateral inquiries.