J-S30028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REGINALD CARR | : | |
| | : | |
| Appellant | : | No. 58 EDA 2023 |

Appeal from the PCRA Order Entered November 22, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011216-2012

BEFORE:  BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 29, 2023**

Reginald Carr appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After review, we affirm.

The Honorable Rose Marie DeFino-Nastasi summarized the pertinent facts as follows:

> On June 9, 2009, the decedent, Kyree Young, was shot and killed during the commission of a robbery by [Carr] and co-defendant, Omar Roane.  Tyreese Gibson was shot in the shoulder and survived.
>
> Tyreese Gibson testified that[,] at approximately 1:11 a.m., he was walking on 56th and Greenway Street[s], in the city and county of Philadelphia, when he observed the decedent.  Gibson did not know the decedent but asked him for a cigarette.  The decedent gave him a cigarette and the two were walking toward Woodland Avenue when two (2) males riding bikes asked the decedent if he had any weed.  The decedent said he only had pills.

As the males pulled over to speak to the decedent, Gibson walked off. Gibson heard someone say, "don't run[,]"[] followed by gunshots. Gibson heard approximately nine (9) gunshots as he was running. He looked back and saw one of the males on the bike holding a gun. Gibson was struck by a bullet in his shoulder.

Gibson gave a description of the two males on the bikes to police later that morning. He described the male with the gun as approximately 5'10", dark-skinned, wearing a blue sweat suit with a white stripe down the side. The other male was approximately 5'7", light-skinned, short hair, slanted eyes, tattoo on his face, and beard. Both males were riding BMX bikes. The gun was a semi-automatic weapon.

On July 22, 2010, Gibson was shown a photo array by homicide detectives. He identified [Carr] and co-defendant, Omar Roane, as the males on the bikes. He identified [Carr] as the male that was holding the gun.

At trial, Gibson testified that he could not identify [Carr] and that the detectives had forced him to pick [Carr] out of the photo array. Gibson was impeached with his prior statement and prior identification of [Carr].

Jessica McNeil testified that she was in her house watching television at approximately 1:10 [a.m.] when she heard approximately five (5) gunshots and looked out of the window. She observed a young black male, wearing a white cap and a blue sweat suit with a light blue stripe down the side, running from 56th and Yocum Street[s] to 55th and Yocum Street[s], holding a gun in his right hand. A few minutes later, McNeil went outside and saw a bike laying in the middle of the street and police near the decedent's body.

The co-defendant, [] Roane, testified that he knew [Carr] for eight (8) years. The two hung out together. In the early morning hours of June 9, 2009, an associate by the name of Jermaine Graham called Roane and gave him the name of someone Roane and [Carr] could rob. Graham said the person would have drugs on him. Roane and [Carr] [rode] to 56th and Paschall Street[s], on their bikes, to meet up with Graham. Graham described the individual they could rob and told [Carr] and Roane that the individual was walking on 56th Street between Woodland and Greenway. [Carr] and Roane went to the area and observed the

decedent, who fit the description, in the company of another person. Roane asked the decedent if he had weed. The decedent said he did not have weed but he had some pills. At that point, Roane rode up the street to look out for police and [Carr] pulled out a gun. Roane heard [Carr] tell someone not to move and then heard gunshots. Roane [rode] back toward [Carr], to see if he was okay, and then [rode] off. Initially, [Carr] was following behind him on his bike, but then dropped the bike, and began running on foot. Roane further testified that [Carr] had a tattoo of a teardrop on his cheek in the courtroom that he did not have on the night of the incident. On the night of the incident, Roane was wearing a black Adidas sweat suit with a white stripe down the side and a white hat. [Carr] was wearing a blue (turquoise) sweat suit with a dark stripe down the side and a grey hat.

Cory Williams testified that he knew [Carr] from the neighborhood. On the night of June 9, 2009, he was sitting on the steps at 54th and Belmar Street with Tymeer Workman and some other friends when he heard a couple of gunshots. Approximately one (1) hour later, [Carr] came around and said that it was "hot" on Woodland Ave. When Williams asked [Carr] why it was "hot," he responded that he and "O" went on a "mission." [Carr] went on to describe that he and "O" attempted to rob a guy, but the guy ran and they fired shots at him. Williams testified that "O" is Omar, but that he did not know his last name. Williams gave his statement to homicide detectives after he was arrested in February, 2011.

[Doctor Edwin] Lieberman from the medical examiner's office testified that the decedent suffered six (6) gunshot wounds.

The defense presented testimony from Ishon Coleman who testified that [Carr] was at home with him the entire night on the night of the incident.

Rashod Carr[, Carr's brother,] testified that Roane made a statement to him that he was framing [Carr] for this murder because [Carr] was "messing" with his girlfriend.

Annette Rodriquez, Roane's girlfriend, testified that Roane made a statement to her that he was blaming [Carr] for the homicide because he heard that [Carr] was "messing" with her.

- 3 -

Michele Coleman testified that she is [Carr]'s aunt and that he lived with her at the time of the incident. She testified that she remembers the date of the incident because she was celebrating the fourth anniversary of a relationship she was in, and was supposed to go out to dinner, but was too tired. She recalled looking in on [Carr] after midnight and he was asleep in his bedroom.

Tymeer Workman testified that he was not with Cory Williams on June 9, 2009, and never overheard [Carr] admit to Williams that [Carr] robbed and shot the decedent.

Sharmella Lewis testified that she knew the decedent from the neighborhood. On June 9, 2009, she was sitting on her front porch at approximately 12:30 a.m. when she saw two males ride by on bikes asking people if they had weed. She could only describe one (1) of the males. She described the male as wearing a black Adidas sweat suit with a white stripe down the side. She stated that she observed a gun on that male's waist. Approximately ten (10) minutes after seeing the males, she heard gunshots.

Trial Court Opinion, 5/3/18, at 4-7 (citations to the record omitted).

On February 10, 2014, after a jury trial, Carr was found guilty of second-degree murder,[1] robbery,[2] and conspiracy to commit robbery.[3] On April 27, 2015, Carr was sentenced to 30 to 60 years' imprisonment for second-degree murder and 10 to 20 years' imprisonment for conspiracy to commit robbery; the sentences were ordered to run concurrently.

On May 26, 2015, Carr filed a timely notice of appeal to this Court. On March 1, 2016, we dismissed the appeal for failure to file a brief. On January 17, 2017, Carr filed a timely *pro se* PCRA petition. Carr's court-appointed

_____

[1] 18 Pa.C.S.A. § 2502(b).

[2] *Id.* at § 3701.

[3] *Id.* at § 903.

- 4 -

counsel filed an amended petition on August 3, 2017.  On January 10, 2018, the PCRA court reinstated Carr's direct appeal rights, *nunc pro tunc*.

On January 17, 2018, Carr filed a *pro se nunc pro tunc* direct appeal to this Court.  On April 17, 2019, we affirmed the judgment of sentence, concluding that the evidence was sufficient to sustain Carr's convictions and that Carr had waived his claim that the verdict was against the weight of the evidence.  **See Commonwealth v. Carr**, 216 A.3d 399 (Pa. Super. 2019) (Table).  On May 17, 2019, Carr filed an unsuccessful petition for allowance of appeal with the Pennsylvania Supreme Court.

On February 6, 2020, Carr filed a *pro se* PCRA petition.  The PCRA court appointed counsel.  On October 25, 2021, PCRA counsel filed an amended petition, raising a single claim of after-discovered evidence.  This evidence was a letter purportedly written by Roane, indicating that Roane had killed Young and was planning to implicate Carr to avoid additional prison time.[4]

---

[4] The letter is discussed further below, as it applies to the instant appeal, but allegedly stated the following:

> Yo bro[,] this is Lil O[.] Listen[,] rite [,] I got to do w[hat] I got to do[.]  I dont care who feel some kind of way about what Im doing[;] Im looking at 95 year[s] minimum[.]  I done [sic] miss all little Nana['s] birthdays.  I got to make it back home to her so Im gone [sic] say whatever to get home.  Listen[,] I cant go down for a body[,] and the law think[s] Lil Reg did it[,] so Im gone [sic] put it on him[.]  [Redacted]  It[']s him or me[;] I just need one more reason to say what Im gone [sic] to say[;] they believe it. P.S. This the Feds[,] [redacted] they can make anything happen[.]  Write me back the same way it came[;] if you dont[,] I know where you stand.

*(Footnote Continued Next Page)*

Carr argued that the letter would have strengthened Carr's defense and was a confession that Roane killed Young. Carr further argued that the letter, in conjunction with testimony from Romel Moten, the recipient of the letter, would entitle him to a new trial.

On May 17, 2022, the PCRA court issued Pa.R.Crim.P. 907 Notice of its Intent to Dismiss, stating that the petition was untimely filed. **See** 42 Pa.C.S.A. § 9545(b).[5] On June 28, 2022, Carr filed another *pro se* PCRA petition, which the PCRA court treated as a response to the Rule 907 Notice. The PCRA court formally dismissed Carr's PCRA petition, without an evidentiary hearing, on November 22, 2022. On December 23, 2022, Carr timely filed the instant notice of appeal.[6] Carr subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement.

_____

Appellant's PCRA Petition, 5/17/22, at 5.

[5] Though the notice states the petition was untimely filed, the PCRA court's analysis states that Roane's letter did not meet the standard for after-discovered evidence, did not require an evidentiary hearing, and was the basis for dismissal. **See** Pa.R.Crim.P. 907 Notice, 5/17/22. In addition, a review of the record reveals that Carr's judgment of sentence became final on February 5, 2020, 90 days after the Supreme Court denied Carr's petition for allowance of appeal on November 6, 2019. **See Commonwealth v. Carr**, 219 A.3d 601 (Pa. 2019) (No. 242 EAL 2019). Carr's *pro se* PCRA petition was filed on February 6, 2020, well within the one-year PCRA timing requirement. **See** 42 Pa.C.S.A. § 9545(b).

[6] Though the date the notice of appeal was filed appears to be beyond the thirty-day appeal period pursuant to Pa.R.A.P. 903, we are to exclude the first and include the last day of such a period. **See** 1 Pa.C.S.A. § 1908. The date of Carr's notice of appeal was on the thirtieth day, and, therefore, is timely.

- 6 -

Carr sets forth the following issues on appeal:

[1.] Whether [Carr] has after-discovered evidence that a letter written by Omar Roane showed that Roane had committed the murder and had planned to fabricate a story to pin the murder on [Carr.]

[2.] Whether the PCRA court abused its discretion by failing to hold an evidentiary hearing even though [Carr] presented a genuine issue of material fact[.]

[3.] Whether the PCRA [c]ourt erred as a matter of law and abused its discretion when it denied [Carr]'s sought-after PCRA relief for a new trial without an evidentiary hearing based upon Detective Howard Peterman's pattern and practice of police misconduct[.]

Appellant's Brief, at *viii*.

The standard of review of an order denying a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. **Commonwealth v. Johnston**, 42 A.3d 1120, 1126 (Pa. Super. 2012). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Id**.

Under Pennsylvania Rule of Criminal Procedure 907, the PCRA court may dismiss a PCRA petition without a hearing where "the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." Pa.R.Crim.P. 907. To this end, a court may decline to hold a hearing on the PCRA if the petitioner's claim is "patently frivolous and is without a trace of support either in the record or from other evidence." **Commonwealth v. Holmes**, 905 A.2d 507, 509

(Pa. Super. 2006); Pa.R.Crim.P. 907 (Comment). In short, there is no absolute right to an evidentiary PCRA hearing if the court can determine from the record that no genuine issues of material fact exist. **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008).

Carr's first claim is that he is entitled to relief on the basis of after-discovered evidence. It is well-settled that a new trial based upon after-discovered evidence will only be granted if: (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. **Commonwealth v. D'Amato**, 856 A.2d 806, 823 (Pa. 2004). **See also Commonwealth v. Buehl**, 508 A.2d 1167, 1182-83 (Pa. 1986); 42 Pa.C.S.A. § 9543(a)(2).

The Pennsylvania Supreme Court has defined cumulative evidence as evidence that "supports a fact established by the existing evidence." **Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018) (quotation omitted). Furthermore, the Court stated that "after-discovered evidence is merely corroborative or cumulative—and thus not sufficient to support the grant of a new trial—if it is of the same character and to the same material point as evidence already adduced at trial." **Id.** at 973-74. If, instead, the after-discovered evidence is of a "different and 'higher' grade or character, though upon the same point, or of the same grade or character on a different

point, it is not 'merely' corroborative or cumulative, and may support the grant of a new trial based on after-discovered evidence." **Id.** at 974.

Carr argues that, applying the four-pronged after-discovered evidence test to the letter Roane sent to Moten, he is entitled to relief where: (1) he was made aware of the letter on the fifth day of his trial, and that it could not have been obtained any earlier through due diligence because Moten was in federal custody and unable to testify or provide the letter at the time of trial;[7] (2) the letter is not cumulative evidence and is of a higher grade than that of testimony presented at trial; (3) the letter is not solely used to impeach Roane as a witness, but is also evidence of Roane's plan to frame Carr and is a confession that he committed the murder; and (4) if the letter had been presented at trial, the trial would have had a different outcome. **See** Appellant's Brief, at 7-8.

The PCRA court, in its analysis, found that Carr's claim of after-discovered evidence failed to satisfy the after-discovered evidence test, concluding that the letter was cumulative evidence, not of a higher grade than the evidence presented at trial, that it could have been obtained prior to or during trial with reasonable diligence, that the letter's integrity is dubious, and that admission of the letter would not have resulted in a different outcome in

---

[7] On the record at trial, Carr's counsel stated that Moten was in federal custody at the time and, therefore, unavailable to testify as to the letter. PCRA Court Opinion, 2/21/23, at 5. Moreover, Carr did not in fact receive the letter until the trial concluded. Appellant's Brief, at 7.

the case. **See** Pa.R.Crim.P. 907 Notice, 5/17/22. We agree with the PCRA court's analysis.

A review of the trial transcript reveals that Carr's trial counsel was in touch with Moton's attorney and, with reasonable diligence, could have obtained the letter at or before trial as part of his attempt to impeach Roane at trial. **See** N.T. Trial, 2/7/14, at 95-100. Even if the letter could not have been obtained prior to or at trial, the letter is cumulative of evidence presented at trial. Specifically, Carr presented evidence from two witnesses, his brother, Rashod Carr, and Roane's girlfriend, Annette Rodriguez, both of whom stated that Roane was attempting to direct law enforcement to Carr as revenge for Carr having a relationship with Roane's girlfriend. **See id.** at 113-27; **id.**, 2/10/14, at 12-17. Both testified that Roane only implicated Carr in the instant case as revenge. **Id.** It follows that the letter, if authenticated, would only serve to impeach Roane and the potential veracity of his testimony, evidence already presented at Carr's trial. **See** N.T. Trial, 2/5/14, at 130-35, 151-52, 164-65, 198-204.

We will not disturb the PCRA court's denial of a PCRA petition absent clear legal error. **See Johnston**, **supra**. As such, we conclude that the court did not err in denying Carr's PCRA petition with respect to after-discovered evidence where the record contains sufficient evidence for the court's finding that the letter could have been discovered before or during trial, with reasonable diligence, and if not, that the letter was cumulative evidence. **Id.**

Carr's second claim is that the PCRA court abused its discretion by failing to hold an evidentiary hearing where Carr presented a genuine issue of material fact, specifically the letter discussed above. It is well-settled that evidentiary hearings are not required in post-conviction proceedings when "there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." Pa.R.Crim.P. 907(1). **See, e.g.**, **Commonwealth v. Harris**, 852 A.2d 1168, 1180 (Pa. 2004). Furthermore, a court's decision to deny a PCRA claim without a hearing "may only be reversed upon a finding of an abuse of discretion." **Commonwealth v. Keaton**, 45 A.3d 1050, 1094 (Pa. 2012).

Carr argues that an evidentiary hearing was necessary to authenticate the letter Roane sent to Moten. If deemed authentic, Carr argues, the letter would have "profoundly bolstered [his] defense at trial." Appellant's Brief, at 10. Carr further argues that the PCRA court could not have assessed the authenticity of the letter from the pleadings alone, and so a hearing, during which Moten would testify as to the veracity of the letter, was necessary. **Id**.

Having determined earlier that the letter failed to satisfy the after-discovered evidence test, it is clear that such a claim had no merit and, therefore, no hearing was necessary. **See Harris, supra**.

Carr's third claim is that the PCRA court abused its discretion when it denied Carr PCRA relief for a new trial, or an evidentiary hearing, based upon alleged misconduct by Detective Howard Peterman.

As we stated above, our scope and standard of review of the denial of a PCRA petition is limited to "whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error." ***Commonwealth v. McCready***, 295 A.3d 292, 297 (Pa. Super. 2023) (internal citation omitted).

Carr includes this claim in his statement of the questions involved with the following footnote: "For more on this claim, ***see*** the Appellant's *Pro Se* June 28, 2022, Petition included in the certified record from pages 312-402." Appellant's Brief, at *viii* (emphasis original and added). As such, Carr's PCRA counsel attempted to preserve the issue raised in Carr's *pro se* petition while litigating two other claims regarding the letter discussed above. Such an attempt to incorporate an argument by reference, without inclusion in the petition itself and without additional explanation or analysis as to the legal validity of the claim, is an attempt to engage in hybrid representation. ***See Johnson***, ***infra***.

Pennsylvania courts have long prohibited hybrid representation. ***See, e.g.***, ***Commonwealth v. Jette***, 23 A.3d 1032, 1036 (Pa. 2011). When a defendant or appellant is represented by counsel, the court will not consider *pro se* filings. ***Commonwealth v. Ali***, 10 A.3d 282, 293 (Pa. 2010). Moreover, the PCRA court may only address issues raised in a counseled petition when represented by counsel. ***Commonwealth v. Markowitz***, 32 A.3d 706, 713 n.5 (Pa. Super. 2011). As we have clearly stated, "[i]t is incumbent upon counsel to examine the merits of the *pro se* claims and

determine whether those issues are worth pursuing in an amended petition."

***Commonwealth v. Johnson***, 179 A.3d 1153, 1157 (Pa. Super. 2018). Any

attempt to simply incorporate *pro se* claims renders such claims waived on

appeal. ***See id***.

In this case, Carr's counsel simply seeks to incorporate the entirety of

Carr's *pro se* petition as argument and support for this third claim. In his

brief, the only mention of the claim is in his statement of the questions

involved and summary of the argument, both with footnotes directing this

Court to Carr's *pro se* petition. ***See*** Appellant's Brief, at *viii*, 5. Accordingly,

because Carr's *pro se* claims cannot be incorporated into and are not

developed within Carr's brief,[8] his third claim is waived on appeal.[9]

---

[8] "We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review." ***Commonwealth v. Plante***, 914 A.2d 916, 924 (Pa. Super. 2006) (internal citation omitted); ***see also*** Pa.R.A.P. 2119 ("The argument shall be divided into as many parts as there are questions to be argued; and shall have . . . discussion and citation of authorities as are deemed pertinent."). As such, "our appellate rules do not allow incorporation by reference of arguments contained in briefs filed with other tribunals, or briefs attached as appendices, as a substitute for the proper presentation of arguments in the body of the appellate brief." ***Commonwealth v. Briggs***, 12 A.3d 291, 343 (Pa. 2011).

[9] Even if not waived, we would conclude Carr is not entitled to relief on his third claim. Carr, at the time *pro se*, submitted a filing to the PCRA court averring that Detective Howard Peterman, the lead detective on the case, exhibited a "pattern and practice of wrongful misconduct," which led to an exoneration in another case. Appellant's PCRA Petition, 6/28/22, at ¶ 5 (unnecessary capitalization omitted). The PCRA court treated this filing as a response to its Rule 907 notice. ***See*** PCRA Court Opinion, 2/21/23, at 2. A review of the record shows that the PCRA court inquired into this claim and was informed by the Commonwealth's attorney that no misconduct disclosure

*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/29/2023

---

form was found for Detective Peterman. **See** N.T. PCRA Dismissal Hearing, 11/22/22, at 3-4. Carr's counsel also testified that he did not receive any disclosure regarding Detective Peterman. **Id.** at 7. Judge DeFino-Nastasi denied and formally dismissed Carr's PCRA petition stating, on the record, that allegations of misconduct by Detective Peterman "came out at trial" and as such the "issues raised . . . have no merit." **Id.** at 8. The PCRA court's dismissal of Carr's PCRA and this claim is supported by record and, as such, this claim, if not waived, would fail.