J-S67034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GARY EUGENE SEGRAVES, | |
| Appellee | No. 181 MDA 2015 |

Appeal from the PCRA Order January 21, 2015
in the Court of Common Pleas of Lycoming County
Criminal Division at No.: CP-41-CR-0000548-2009

BEFORE: BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED FEBRUARY 16, 2016**

The Commonwealth of Pennsylvania appeals from the order granting the petition filed by Appellee, Gary Eugene Segraves, pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, and awarding him a new trial. On appeal, the Commonwealth challenges the PCRA court's determination that trial counsel was ineffective for failing to present the testimony of a certain witness during Appellee's second trial. Specifically, it argues that Appellee failed to establish prejudice. After careful review, we agree with the Commonwealth, and reverse the order of the PCRA court.

We take the relevant facts and procedural history of this case from our independent review of the certified record, including the trial/PCRA court's

_____

[*] Retired Senior Judge assigned to the Superior Court.

December 13, 2011, January 21, 2015, and June 2, 2015 opinions. On March 12, 2009, Appellee was charged with twelve counts of rape of a child less than thirteen years of age,[1] endangering the welfare of a child,[2] and a multitude of other related offenses arising from the sexual abuse of his stepdaughter, B.H. (**See** Trial Court Opinion, 12/13/11, at 1). The abuse occurred over a two-year period, from approximately January 2006 until January 2008, while B.H. was between the ages of eleven and thirteen years old. (**See id.**). Appellee's wife and B.H.'s mother, M.S., was charged with corruption of a minor and endangering the welfare of a child in connection with the abuse, for failing to take measures to protect B.H. from Appellee after she learned of the allegations. (**See** PCRA Court Opinion, 6/02/15, at 1).

On August 31, 2010, Appellee and M.S. proceeded to a jury trial as co-defendants. (**See** Trial Ct. Op., 12/13/11, at 1). The jury found both parents guilty of endangering the welfare of child, but was unable to reach a unanimous verdict on the remaining charges. (**See** PCRA Ct. Op., 6/02/15, at 1). The trial court granted a mistrial with respect to the remaining charges. (**See id.**).

---

[1] 18 Pa.C.S.A. § 3121(c).

[2] 18 Pa.C.S.A. § 4304(a)(1).

A second jury trial was held on January 19-21, 2011.[3] (**See** Trial Ct. Op., 12/13/11, at 1). After jury selection, but before the trial commenced, the Commonwealth *nol prossed* the remaining corruption of a minor charge against M.S.; therefore, only Appellee proceeded to trial. (**See** PCRA Ct. Op., 6/02/15, at 1-2). Appellee's defense centered on the theory that B.H. fabricated the rape allegations because she wanted to be removed from his home, and move into the home of her biological father. (**See** N.T. Trial, 1/19/11, at 91-92, 101-02; PCRA Ct. Op., 1/21/15, at 4). At the conclusion of trial, the jury found Appellee guilty of twelve counts of rape of a child less than thirteen years of age; six counts of rape by forcible compulsion; three counts of involuntary deviate sexual intercourse; seven counts of aggravated indecent assault of a child; one count of unlawful contact with a minor; eighteen counts of statutory sexual assault; one count of corruption of a minor; and twenty-five counts of indecent assault. (**See** Trial Ct. Op., 12/13/11, at 1-2).

On June 30, 2011, the trial court held a sentencing hearing at which it stated that the evidence of Appellee's guilt was "overwhelming" and noted as significant the:

> undisputed [medical expert] testimony that [B.H.] had suffered a penetrating wound to her hymen [and] that this could only have happened the way she alleged it to happen. It couldn't have

---

[3] B.H. was sixteen years old at the time of the second trial. (**See** N.T. Trial, 1/19/11, at 42).

happened through any other way. There wasn't contrary medical evidence, there wasn't contrary evidence of her undergoing some sort of massive injury that would have caused it. There wasn't even contrary evidence that she would have been engaged in an activity that might have caused it. . . .

(N.T. Sentencing, 6/30/11, at 64-65). The court designated Appellee a sexually violent predator (SVP), and sentenced him to an aggregate term of not less than seventy-one nor more than 142 years' incarceration, followed by five years' probation. (*See id.* at 34; *see also* Sentencing Order, 6/30/11, at unnumbered page 4).

Appellee filed a direct appeal, and this Court affirmed the judgment of sentence on December 20, 2012. (*See Commonwealth v. Segraves*, 64 A.3d 29 (Pa. Super. 2012) (unpublished judgment order)). Our Supreme Court denied Appellee's petition for allowance of appeal on October 23, 2013. (*See Commonwealth v. Segraves*, 77 A.3d 1260 (Pa. 2013)). The United State Supreme Court denied his petition for writ of *certiorari* on April 7, 2014. (*See Segraves v. Pennsylvania*, 134 S.Ct. 1793 (2014)).

On March 12, 2014, Appellee filed the instant PCRA petition.[4] On June 26, 2014, appointed counsel filed an amended petition claiming that Kyle

_____

[4] Appellee filed his PCRA petition while his direct appeal was pending before the United States Supreme Court and, thus, the petition was premature. *See Commonwealth v. Leslie*, 757 A.2d 984, 985 (Pa. Super. 2000) (noting "[a] PCRA petition may only be filed after [a petitioner] has waived or exhausted his direct appeal rights") (citation and emphasis omitted). Nevertheless, because the PCRA court did not act on the petition, other than to appoint counsel, until after Appellee's direct appeal terminated, we decline to vacate the PCRA court's order on this basis. *Cf. id.* at 986 (vacating order and remanding for further proceedings where PCRA court
*(Footnote Continued Next Page)*

Rude, Esq., Appellee's counsel during both trials, was ineffective for failing to call B.H.'s childhood friend, M.M., as a witness during the second trial. (*See* Amended PCRA Petition, 6/26/14, at unnumbered pages 3-4, 7-8). Specifically, at Appellee's first trial, B.H. testified that she told M.M. about the sexual abuse. (*See* PCRA Ct. Op., 1/21/15, at 2). After the trial, however, M.S.'s attorney, Gregory Scott Gardner, Esq., interviewed and subpoenaed M.M., and she indicated that B.H. did not tell her about the abuse. (*See* Witness Certification of Gardner, 6/26/14, at 1 ¶¶ 3, 5). At Appellee's second trial, B.H. testified that when she was approximately eleven years old, while riding on the school bus, she told M.M. that Appellee was molesting her. (*See* N.T. Trial, 1/19/11, at 50-51, 87). Neither Rude nor the Commonwealth called M.M. to testify as a witness during the second trial.

On December 9, 2014, the PCRA court held a hearing at which Gardner, Rude, and M.M.[5] testified. Gardner explained that, in preparation for the second trial, he and Rude discussed strategies and split up work with respect to defense witnesses. (*See* N.T. PCRA Hearing, 12/09/14, at 7). When the remaining charge against M.S. was *nol prossed*, he advised Rude

*(Footnote Continued)* ─────────────

improperly proceeded on merits of petition during the pendency of direct appeal).

[5] M.M. was twenty years old at the time of the PCRA hearing. (*See* N.T. PCRA Hearing, 12/09/14, at 28).

that M.M. was under subpoena and that he should call her as a witness. (*See id.* at 6-7). Rude testified that he recalled discussing M.M. as a potential witness with Gardner; that he believed M.M.'s testimony would be significant to undermine B.H.'s credibility; and that he made a mistake in not calling her as a witness. (*See id.* at 16, 18-21). M.M. testified consistent with her prior interview that she was friends with B.H. during elementary and middle school, and that B.H. did not tell her about the abuse. (*See id.* at 28-30, 32). She also acknowledged that the school bus tended to be very noisy with children carrying on multiple conversations at the same time, and that it is possible that B.H. said something to her that she did not hear. (*See id.* at 33-34).

On January 21, 2015, the PCRA court entered its opinion and order granting Appellee's PCRA petition and awarding him a new trial on all charges, except the endangering the welfare of a child charge, which he was convicted of at the first trial. (*See* Order, 1/21/15). This timely appeal followed.[6]

The Commonwealth raises the following issue for our review: "Did the [PCRA court] err in finding trial counsel was ineffective for failure to present the testimony of a witness at trial and that by failing to call the witness

---

[6] Pursuant to the PCRA court's order, the Commonwealth filed a timely concise statement of errors complained of on appeal on February 13, 2015. *See* Pa.R.A.P. 1925(b). The court entered an opinion on June 2, 2015. *See* Pa.R.A.P. 1925(a).

[Appellee] was prejudiced[?]" (Commonwealth's Brief, at 7). It argues that M.M.'s testimony was not necessary to avoid prejudice to Appellee, and that there is no reasonable probability that the outcome of the trial would have been different if M.M. had testified. (*See id.* at 11). We agree.

"Our standard of review of the PCRA court's grant of relief is clear: we examine whether the court's findings are supported by the record and whether its conclusions of law are free from legal error." *Commonwealth v. Williams*, 105 A.3d 1234, 1239 (Pa. 2014), *cert. granted sub nom. Williams v. Pennsylvania*, 136 S.Ct. 28 (2015) (citation omitted). In order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at Section 9543(a)(2) of the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2). These errors include ineffective assistance of counsel. *See id.* at § 9543(a)(2)(ii).

We begin by noting that the law presumes that counsel has rendered effective assistance. *See Commonwealth v. Harris*, 852 A.2d 1168, 1173 (Pa. 2004).

> In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). When considering such a claim, courts presume that counsel was effective, and place upon the [petitioner] the burden of proving otherwise. Counsel cannot be found ineffective for failure to assert a baseless claim.

To succeed on a claim that counsel was ineffective, [the petitioner] must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him.

Furthermore:

[t]o demonstrate prejudice, [the petitioner] must show there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. When it is clear the party asserting an ineffectiveness claim has failed to meet the prejudice prong of the ineffectiveness test, the claim may be dismissed on that basis alone[.]

**Commonwealth v. Michaud**, 70 A.3d 862, 867 (Pa. Super. 2013) (case citations and some quotation marks omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." **Commonwealth v. Birdsong**, 24 A.3d 319, 329 (Pa. 2011) (citations omitted).

Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the [petitioner's] burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the [petitioner].

**Commonwealth v. Chmiel**, 30 A.3d 1111, 1143 (Pa. 2011) (citation omitted).

Here, the testimony at the PCRA hearing established that the issue of M.M. as a useful defense witness has arguable merit, and that Rude conceded he lacked a reasonable strategic basis for not calling her. (**See** N.T. PCRA Hearing, at 5-6, 16, 18, 20); **see also Michaud**, **supra** at 867. It is also apparent from the record that M.M. existed and was available to

testify, that Rude was aware of her as a potential witness, and that she was willing and able to appear. (*See* N.T. PCRA Hearing, at 6-7, 16, 30); *see also Chmiel*, *supra* at 1143. Accordingly, we must determine whether M.M.'s testimony was necessary in order to avoid prejudice to Appellee. *See Chmiel*, *supra* at 1143; *Michaud*, *supra* at 867. After review, we conclude that her testimony was not necessary to avoid prejudice, and that the Commonwealth's issue on appeal merits relief.

First, the record reflects that the Commonwealth presented compelling evidence of Appellee's guilt. Specifically, B.H. testified extensively regarding Appellee's sexual abuse over a two-year period beginning when she was eleven years old, which progressed from rubbing against her to sexual intercourse, with the duration of the episodes increasing over time. (*See* N.T. Trial, 1/19/11, at 42-45, 58-59). Appellee had sexual intercourse with her two to three times per month and performed oral sex on her on four or five occasions. (*See id.* at 48-49). Appellee permitted B.H. to participate in social activities with her friends only if she cooperated with him sexually; otherwise, he did not allow her to leave the home. (*See id.* at 47-48, 68-69). He separated B.H. from her siblings and called her disparaging names in their presence if she refused to cooperate, and he waited until other family members were asleep or out of the home to abuse her sexually. (*See id.* at 47-50). Appellee continued to have sexual intercourse with her until she told her math teacher about the abuse, and her teacher notified the authorities. (*See id.* at 42, 48, 50, 66, 113).

B.H.'s testimony was corroborated by that of Dr. Kathleen Lewis, an expert in the field of child sexual assault physical examination. (*See id.* at 188-89). Dr. Lewis testified that she examined B.H. in February 2008, when B.H. was thirteen years old, and observed that she had sustained a significant vaginal injury consistent with someone having penetrating intercourse with her. (*See id.* at 193, 198-200, 211). Dr. Lewis opined that this injury was attributable to the sexual abuse because B.H. had "no history in the past of [] falling on a pipe that went up into her . . . [or] [o]f her having been in any kind of a significant automobile accident where she may have had a crush injury to the pelvis that may have caused the tear." (*Id.* at 199-200). At sentencing, the trial court emphasized the significance of Dr. Lewis's testimony regarding B.H.'s physical injury, and described the evidence of Appellee's guilt as "overwhelming." (N.T. Sentencing, 6/30/11, at 65; *see id.* at 64). The record therefore reflects that the Commonwealth presented ample evidence of Appellee's guilt.

Second, M.M.'s proffered testimony that B.H. did not tell her about the abuse would have been used by the defense at trial solely to impeach B.H's credibility. (*See* N.T. PCRA Hearing, at 16, 19-20). However, Rude acknowledged that he used other means of impeaching B.H.'s credibility, by presenting evidence of her motive for fabricating the allegations and pointing out inconsistencies in her testimony. (*See id.* at 19, 21). At trial, Rude cross-examined B.H. at length regarding the restrictions at M.S.'s house, the fact that she was routinely getting into trouble at school, her desire to live

with her biological father, and her delay in reporting the abuse to her father or anyone else. (*See* N.T Trial, 1/19/11, at 81, 84-88, 90-97, 99-109). Although Rude neglected to call M.M. as a witness, he did point out to the jury during closing argument that M.M. had never testified in support of B.H. (*See* PCRA Ct. Op., 1/21/15, at 7; Commonwealth's Brief, at 10, 15; Appellee's Brief, at 7-9, 14).[7] Additionally, the trial court gave the jury a failure to make prompt complaint charge, instructing that it should consider B.H.'s delay in reporting the abuse in evaluating the reliability of her testimony. (*See* N.T Trial, 1/20/11, at 99-100, 118-19). Given this record, M.M.'s testimony regarding an incident that she disputes or does not remember took place when she was eleven years old on a school bus would have added little with respect to evaluating B.H.'s credibility.

Based on the foregoing, we conclude that the PCRA court erred as a matter of law by granting Appellee a new trial based on ineffective assistance of trial counsel. **See Williams**, **supra** at 1239. While Rude could, and probably should, have attempted further to impeach B.H.'s credibility by calling M.M. as a witness, a review of the record makes clear that he made sustained, strenuous efforts to undermine B.H.'s credibility during trial by highlighting her motive to lie, inconsistencies in the

_____

[7] The attorneys' closing arguments were not transcribed, (*see* N.T Trial, 1/20/11, at 106); however, the parties and the PCRA court acknowledge that Rude made this argument to the jury.

testimony, and her delay in reporting the abuse. The jury obviously believed B.H.'s testimony, which was strongly supported by medical expert testimony, and, shortly after trial, the sentencing court described the evidence of Appellee's guilt as "overwhelming." Thus, we conclude that Appellee has failed to demonstrate prejudice, and has not met his burden of establishing that any failing on counsel's part "in the circumstances of [this] particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii); **see also Michaud**, **supra** at 867. Therefore, the Commonwealth's issue on appeal merits relief. Accordingly, we reverse the order of the PCRA court.

Order reversed. Judgment of sentence reinstated. Jurisdiction relinquished.

Judge Panella joins the Memorandum.

Judge Bowes files a Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/16/2016</u>