J-A04044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FELIX ANTONIO SALAZAR | |
| Appellant | No. 1745 MDA 2016 |

Appeal from the Judgment of Sentence May 17, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004977-2014

BEFORE:  STABILE, J., NICHOLS, J., AND RANSOM, J.*

MEMORANDUM BY RANSOM, J.:                **FILED MARCH 27, 2018**

Appellant, Felix Salazar, appeals from the judgment of sentence entered May 17, 2016, after a jury convicted him of rape by forcible compulsion, rape by threat of forcible compulsion, rape of a child, intimidation of a witness or victim to refrain from reporting, intimidation of a witness or victim to withhold information, intimidation in a child abuse case, conspiracy to commit intimidation of a witness or victim to refrain from reporting, conspiracy to commit intimidation of a witness or victim to withhold information, indecent exposure, corruption of minors – defendant age 18 or above, and corruption of minors, generally.[1]  We affirm.

_____

[1] 18 Pa.C.S. §§ 3121(a)(1), 3121(a)(2), 3121(c), 4952(a)(1), 4952(a)(3), 4958(a)(2)(ii), 903 (both conspiracy), 3127(a), 6301(a)(1)(ii), and 6301(a)(1), respectively.

*Retired Senior Judge Assigned to the Superior Court

The victim, L.C., was born in March 2000; her mother, M.C., and Appellant's girlfriend, V.G., are sisters. Notes of Testimony Trial (N. T. Trial) at 200; Trial Court Opinion (TCO), 3/22/17, at 3-4. In 2013, L.C. disclosed to M.C. that she had been sexually assaulted by Appellant multiple times when she was between the ages of four and twelve years old and that the abuse began while she lived in New York before moving to Pennsylvania in 2006. After L.C. gave a written statement to police, Appellant left the United States for the Dominican Republic.

V.G. called M.C. "two or three times" offering her money if L.C. and M.C. would agree to retract their allegations against Appellant. N. T. Trial at 205-07; TCO at 4. After M.C. told the police about V.G.'s offer, at the direction of investigators, M.C. had three recorded telephone conversations with V.G. regarding the payment of funds in return for dropping the charges. After a few months, L.C.'s family received a promissory note, signed by Appellant and prepared in the Dominican Republic, promising to pay $40,000 for L.C.'s education. Shortly thereafter, Appellant returned to the United States and was arrested.

At trial, L.C. provided a detailed account of her abuse. In addition, she testified that, while the abuse was ongoing, Appellant would "say not to tell anyone and if [she] did, then something bad would happen." N. T. Trial at 115.

During cross-examination, defense counsel directed L.C. to a specific paragraph in her written statement to law enforcement:

Q      And there you wrote, I don't know my exact age at any point, is that what you wrote in that statement?

A      Yes.

N. T. Trial at 164.  During re-direct, the Commonwealth requested L.C. read her entire statement to the jury in order to provide context for that paragraph. Appellant objected, contending:  "The rest of the statement doesn't say anything about the one paragraph I asked about, it's all different stuff again." *Id.* at 180-81.  The trial court overruled Appellant's objection and permitted L.C. to read her statement, in which she had also written that she knew that the sexual abuse began in 2004 while she still resided in New York.

Also during trial, after M.C. testified about the content of the recorded phone calls between herself and V.G., N. T. Trial at 205-10, transcripts of all three calls were provided to the jury.  Commonwealth's Ex. 18-20.[2]  M.C. also testified about receiving the promissory note, and the promissory note itself was admitted into evidence.  Commonwealth's Ex. 15; N. T. Trial at 211-13. She further stated that she recognized the signature on the promissory note as Appellant's, and the handwriting on the envelope in which it was mailed to her as V.G.'s.

---

[2] All three recorded telephone calls were conducted in Spanish.  Transcripts of the translations of the conversations into English were given to the jury. Commonwealth's Ex. 18 transcribes a recorded call from May 19, 2014; Commonwealth's Ex. 19 transcribes a recorded call from May 30, 2014; and Commonwealth's Ex. 20 transcribes a recorded call from June 3, 2014.

V.G. exercised her right not to incriminate herself and did not testify at Appellant's trial. Appellant, however, did testify in his own defense and denied L.C.'s allegations against him. Nevertheless, he admitted to executing a promissory note to pay $40,000 for L.C.'s education, although he never expected actually to give L.C.'s family any money, because V.G. "told" him "how to word" it and to sign it. N. T. Trial at 334-35, 339.[3]

After the guilty verdict on November 19, 2015, Appellant was sentenced on May 17, 2016, to eleven to twenty-two years of confinement followed by ten years of probation. On May 27, 2016, Appellant filed a motion to reconsider and modify sentence and a post-sentence motion for new trial and/or arrest of judgment and/or judgment of acquittal. On September 26, 2017, all post-sentence motions were denied, with the exception of the trial court's grant of Appellant's request to be allowed computers and internet access when released on probation.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive opinion.

Appellant now raises the following issues on appeal:

 I.     Did the trial court abuse its discretion where, after a limited and entirely accurate reference during cross-examination to

---

[3] When asked why he signed the promissory note, Appellant stated that he wanted to stop the "harassing" calls to V.G., because "her diabetes went down to 56, [V.G.] was about to die," although he did not know at the time he executed the note that detectives had not yet spoken with V.G. N. T. Trial at 333-34.

[L.C.]'s written statement, it permitted the Commonwealth to introduce the entire statement pursuant to an erroneous reading of Pa.R.E. 106?

II.    Where phone calls between [V.G.] and [M.C.] were not in furtherance of a conspiracy, and contained irrelevant and prejudicial hearsay, did the trial court abuse its discretion by permitting the jury to hear the calls in their entirety?

III.    Was the evidence insufficient to sustain three counts each of intimidation of a witness and conspiracy to commit the same where it demonstrated only financial inducement and vague statements that if others learned of the charged abuse, something bad would happen?

Appellant's Brief at 5 (suggested answers omitted).

## Standard of Review for Admission of Evidence

Because Appellant's first two issues concern the admission of evidence,

we begin by noting the standard of review for the admission of evidence:

> Questions regarding the admissibility or exclusion of evidence are also subject to the abuse of discretion standard of review. Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. Relevance is a threshold consideration in determining the admissibility of evidence. A trial court may, however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Generally, for the purposes of this evidentiary rule, "prejudice" means an undue tendency to suggest a decision on an improper basis. The erroneous admission of harmful or prejudicial evidence constitutes reversible error.

***Partlow v. Gray***, 165 A.3d 1013, 1016–17 (Pa. Super. 2017) (citation

omitted).

## Admission of L.C.'s Statement

Appellant first contends that "[t]he trial court abused its discretion by

permitting the Commonwealth to introduce the entirety of L.C.'s written

statement to law enforcement based on an erroneous reading of Pa.R.E. 106." Appellant's Brief at 10. Appellant refers to his questions to L.C. as "cursory," adding that they "did not mischaracterize any part of the statement." *Id.* He continues that "[t]he Commonwealth never identified how [Appellant's] trial counsel's questions were misleading or how introduction of L.C.'s statement in its entirety would have put the questions and her answers in context." *Id.* at 11. He further argues that "[t]he portions of the statement outside of that introduced by Appellant were offered as a prior consistent statement and were, therefore, inadmissible hearsay." *Id.*

Pa.R.E. 106 states, in its entirety: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement-- that in fairness ought to be considered at the same time." The comment to Pa.R.E. 106 explains:

> The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context. This rule gives the adverse party the opportunity to correct the misleading impression at the time that the evidence is introduced. The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the proffered part.

Here, L.C. was asked about her age during the sexual assaults. In her statement to law enforcement, L.C. had written that she was unsure of her "exact age at any point." During cross-examination, defense counsel implied that L.C. was uncertain when the assaults occurred. The trial court permitted

L.C. to read her entire statement during re-direct, including where she had written that the abuse began in 2004 while she still lived in New York.

We agree with the trial court that L.C.'s entire statement needed to be read in order "to correct the misleading impression" given by defense counsel that L.C.'s memory was vague or flawed when only a portion of her written statement had been "taken out of context." Cmt. to Pa.R.E. 106. The entirety of the statement clarified that L.C. merely could not recall her precise age at the time of each assault, not that she was unaware of or lying about the timeframe for Appellant's course of conduct. Accordingly, the entirety of L.C.'s written statement was properly introduced, because it "ought in fairness to be considered contemporaneously with the proffered part." *Id.*

As for Appellant's argument that the trial court improperly admitted L.C.'s out-of-court statements into evidence as prior consistent statements, and, "therefore, inadmissible hearsay," Appellant's Brief at 11, this argument also lacks merit, as L.C.'s statements would also have been admissible as prior consistent statements pursuant to Pa.R.E. 613(c). Rule 613(c) allows for the introduction of prior consistent statements of a witness whose credibility has been attacked with allegations of faulty memory or recent fabrication. *Commonwealth v. Harris*, 852 A.2d 1168 (Pa. 2004). Here, Appellant's counsel sought to use L.C.'s written statement to establish that her memory was faulty concerning her age when the assaults occurred. Thus, the remainder of the written statement was admissible to rehabilitate L.C.'s credibility by demonstrating the consistency of her account of Appellant's

sexual abuse. Consequently, all sub-claims within Appellant's first issue are meritless.

**Admission of Recorded Calls**

Appellant raises two challenges to the admission of the recorded phone calls between V.G. and M.C.: (1) they were "irrelevant"; and (2) they were "not subject to a hearsay exception." Appellant's Brief at 14.[4] The Commonwealth answers that "[t]he trial court properly permitted the

_____

[4] In his statement of errors complained of on appeal, Appellant also asserted that the recorded telephone calls were erroneously admitted –

> Because the statements by [V.G.] were not in furtherance of a conspiracy, Appellant's inability to cross-examine her constituted a violation of his right to confront a witness against him under the Pennsylvania and United States Constitutions as she exercised her right to not incriminate herself by not testifying at Appellant's trial[.]

Statement of Errors Complained of on Appeal, 12/20/16, at 1 ¶ 3.b. However, his "Questions Presented" in his brief to this Court makes no mention of the right to confront a witness, the Confrontation Clause, or any similar challenge. Appellant's Brief at 5 ¶ II. He only attacks the admission of the phone calls as "contain[ing] irrelevant and prejudicial hearsay." **Id.** He also makes no reference to confrontation anywhere else in his brief. **Id.** at 14-18. Accordingly, he has abandoned this challenge.

Assuming this issue were not waived, we would agree with the trial court, TCO at 17, that the recorded telephone calls were not testimonial in nature and thus the Confrontation Clause does not apply. **See Commonwealth v. Yohe**, 79 A.3d 520, 530-31 & nn.10-11 (Pa. 2013) (quoting **Crawford v. Washington**, 541 U.S. 36, 51-56 (2004) (describing the class of testimonial statements covered by the Confrontation Clause)). V.G.'s statements in the recorded calls were not "solemn declaration[s] or affirmation[s] made for the purpose of establishing some fact." **Id.** at 531 (quoting **Crawford**, 541 U.S. at 53-56). Consequently, they were non-testimonial, and, ergo, the Confrontation Clause does not apply. **See** TCO at 17. Hence, our conclusion that none of Appellant's sub-claims challenging the admission of the recorded calls merits relief would not change.

introduction of statements made by a co-conspirator in furtherance of the conspiracy." Commonwealth's Brief at 7. We will address each of Appellant's sub-claims in turn.

*Relevance*

The Commonwealth argues that V.G.'s statements in the recorded calls were "relevant to establish the existence of a conspiratorial relationship between [V.G.] and [Appellant] as well as the substantive offense of Intimidation of Witnesses or Victims." Commonwealth's Brief at 9. The Commonwealth also claims that "[t]he conspiratorial relationship between [Appellant] and [V.G.] is readily apparent in the content of the recorded conversations." *Id.* at 10.

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401.

Here, Appellant was charged with multiple counts of witness intimidation and conspiracy to commit witness intimidation. The phone calls were relevant, because they provided contemporaneous evidence of Appellant's co-conspirator's attempt to intimidate L.C. and M.C. into withholding information and retracting their reports to law enforcement. Although Appellant is correct that the Commonwealth did not provide evidence that he caused the phone calls to be made or even knew about them before they occurred, Appellant

eventually learned about V.G.'s offer to M.C. and agreed to participate in the intimidation, as evidenced by the promissory note. Appellant also never provided an alternative explanation for executing the promissory note, such as a genuine, avuncular desire to contribute funds for L.C.'s education. *See* N. T. Trial at 333-34, 337, 339. The recorded calls provided context for the introduction of the promissory note that he admitted to signing during his trial testimony and, ergo, had a tendency to make the fact that the promissory note was related to a bribe more probable than it would be without this evidence. *See* Pa.R.E. 401. Accordingly, even if he did not tell V.G. to call M.C., the fact that he signed the promissory note demonstrates that he eventually became aware of the existence of and content of the phone calls and approved of them, which were designed for his benefit. Consequently, admission of the recorded calls was of consequence in determining the action, and, hence, the content of the recorded calls was relevant.[5]

### *Hearsay Exception*

The Commonwealth counters Appellant's assertion that the recorded calls were not subject to a hearsay exception by arguing that the calls "fall well within the exception for statements made by co-conspirators under Pa.R.E. 803(25)(E)." Commonwealth's Brief at 7.

---

[5] For an additional explanation of the connection between the recorded calls and these charges, *see below* under the heading "Sufficiency of the Evidence."

Pa.R.E. 803(25)(E) states:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . .

**(25)    An Opposing Party's Statement.**  The statement is offered against an opposing party and: . . .

(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

This Court has articulated the standard for admitting evidence pursuant to this exception to the rule against hearsay as follows:

To lay a foundation for the co-conspirator exception to the hearsay rule, the Commonwealth must prove that:  (1) a conspiracy existed between declarant and the person against whom the evidence is offered and (2) the statement sought to be admitted was made during the course of the conspiracy.  In addition, there must be evidence other than the statement of the co-conspirator to prove that a conspiracy existed.

The order of proof is within the discretion of the lower court, which may, **upon only slight evidence of the conspiracy**, admit such statements subject to later proof of the conspiracy.

***Commonwealth v. Feliciano***, 67 A.3d 19, 27 (Pa. Super. 2013) (*en banc*) (emphasis added) (citations omitted).

Here, the statements of Appellant's co-conspirator, V.G., during the recorded calls could be interpreted as evidence (however slight) of a conspiracy between Appellant and V.G., because V.G. offered funds to M.C. in order to benefit Appellant.  "[E]vidence other than the statement of the co-conspirator" was also offered "to prove that a conspiracy existed," ***Feliciano***, 67 A.3d at 27, in the form of the promissory note -- which Appellant admitted signing -- received by L.C.'s family that promised to pay $40,000 for L.C.'s

- 11 -

education. Accordingly, the recorded phone calls were properly admitted pursuant to an exception to the rule against hearsay. Consequently, all of Appellant's sub-claims challenging the admission of the recorded calls merit no relief.

**Sufficiency of the Evidence**

Appellant raises a sufficiency claim: "The evidence at trial was insufficient to sustain each of Appellant's convictions for Intimidation of a Witness or Conspiracy to commit the same, as the evidence established only financial inducement." Appellant's Brief at 18.[6]

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Hutchison***, 164 A.3d 494, 497 (Pa. Super.) (citations omitted), ***appeal denied***, 176 A.3d 231 (Pa. 2017).

*Witness Intimidation*

Appellant was convicted of intimidation of a witness or victim pursuant to two different subsections of 18 Pa.C.S. § 4952(a) – *i.e.*, § 4952(a)(1) and § 4952(a)(3), which state:

> **(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

---

[6] Appellant does not challenge the sufficiency of the evidence to support his conviction for intimidation in a child abuse case pursuant to 18 Pa.C.S. § 4958(a)(2)(ii). ***See*** Appellant's Brief at 18-19.

(1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime. . . .

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

Appellant argues that the evidence failed to establish that he made any threat or intimidated any witness or victim. Appellant maintains that the Commonwealth relied on financial inducement alone and claims that is not sufficient to constitute the elements of the charges.

In **Commonwealth v. Doughty**, 126 A.3d 951 (Pa. 2015), the Supreme Court of Pennsylvania addressed the elements that the Commonwealth must establish in order to prove witness intimidation pursuant to § 4952(a)(3), when the defendant had made a pecuniary offer to a witness. Our Supreme Court stated: "Whether an offer of a pecuniary or other benefit contains sufficient indicia of intimidation is to be determined by the fact finder and assessed under the totality of the circumstances, cognizant that proof of manifest threats is not required." **Id.** at 957. As this Court summarized in **Commonwealth v. Von Evans**, 163 A.3d 980, 984–85 (Pa. Super.), **appeal denied**, 170 A.3d 1023 (Pa. 2017):

Applying this general principle to a case in which the defendant made a pecuniary offer to his wife not to testify at his aggravated assault trial, the Supreme Court first analyzed the explicit language of the Witness Intimidation statute.[7] The Supreme Court observed that the original version of the Witness Intimidation statute used the term "induce." **Doughty**, 126 A.3d

---

[7] The appellant in **Von Evans** was convicted of 18 Pa.C.S. § 4952(a)(6).

at 954. The legislature later amended the Witness Intimidation statute, replacing the term "induce" with "intimidates." *Id.* at 953–54.

The *Doughty* Court, thus, concluded that the fact-finder cannot infer "intimidation" from the mere offer of a pecuniary benefit not to testify. *Id.* at 957. Rather, there must be other evidence from which the fact-finder can infer intimidation, such as a prior relationship between the defendant and victim or the manner in which the defendant made the pecuniary offer not to testify[.]

Although the appellant in *Doughty* was convicted of 18 Pa.C.S. § 4952(a)(3) and the appellant in *Von Evans* was convicted of § 4952(a)(6), we find nothing in the reasoning of either case limiting their analyses to those two subsections. Instead, the rationale of both cases can be extrapolated for 18 Pa.C.S. § 4952(a)(1).

Here, based upon *Doughty*, the trial court asserted:

In this case, while the Commonwealth did show evidence of pecuniary inducement, in the form of the promissory note signed by [Appellant], the Commonwealth presented further evidence in the form of transcribed phone calls between [M.C. and V.G., who] is Appellant's girlfriend and the mother of his children. In these phone conversations, [M.C.] and [V.G.] discuss the amount of money that [Appellant] and [V.G.] will send to [L.C.]'s family if they drop the charges.

[V.G.] repeatedly talks of the difficulties these charges are causing her and her family. She states that she cries and cries and that she is going to die. In the first conversation, [V.G.] states "It was told - It was told to him, to do it and sign it. He didn't want to accept that because that would be accepting that he is guilty. I told him I was going to die here." Throughout these phone conversations, [V.G.] repeatedly discusses the pain she and [Appellant] are going through as a result of these charges. In addition, [L.C.] testified that while the abuse was ongoing, [Appellant] would tell her not to tell anyone or something bad would happen.

When looking at the totality of the circumstances, [Appellant] and [V.G.] intimidated and conspired to intimidate [L.C.]. [Appellant]

- 14 -

told [L.C.] that if she reported the abuse to anyone, something bad would happen. [Appellant] and [V.G.] attempted to pay [L.C.] money in exchange for her dropping the charges. Further, [V.G.] would repeatedly tell [M.C.] about the pain these charges were causing her and her family, even stating that she was going to die. Therefore, there was sufficient evidence put forth by the Commonwealth to the jury for them to find [Appellant] guilty of the intimidation charges above.

TCO at 7-8 (citations to the record omitted). We agree with the trial court's analysis, but we also note that, in addition to the evidence mentioned by the trial court, including the admission of the phone calls themselves, M.C. testified as to the content of the conversations between herself and V.G. about the offer of money to retract the accusations against Appellant. N. T. Trial at 205-13. M.C. further testified that, when she received the promissory note, she recognized the signature on it as Appellant's and the handwriting on its mailing envelope as V.G.'s. *Id.* Additionally, Appellant admitted during his trial testimony that he signed the promissory note and was following V.G.'s instructions. *Id.* at 334-45, 339. Thus, under the totality of the circumstances, the evidence was more than sufficient to support Appellant's conviction for witness intimidation. *Von Evans*, 163 A.3d at 984–85.

### *Conspiracy*

Appellant also insists that the recorded calls do not establish that a conspiracy existed, because there was no proof that Appellant caused those phone calls to be made. Appellant's Brief at 18.

Appellant was convicted of conspiracy to commit witness intimidation pursuant to 18 Pa.C.S. § 903(a), which defines conspiracy as:

- 15 -

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

A criminal conspiracy conviction requires proof of:

(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

**Commonwealth v. Thomas**, 65 A.3d 939, 943 (Pa. Super. 2013) (internal citations and quotation marks omitted) (some formatting added).

Here, the trial court summarized the evidence of conspiracy as follows:

[T]he Commonwealth provided evidence that [Appellant] and [V.G.] conspired to send . . . $40,000.00 [to L.C.] in exchange for dropping the charges against him. Further, [V.G.], the co-conspirator, discussed the preparation of the document and the strain the charges were causing her family with her sister, [M.C.]. The document was prepared in the Dominican Republic, where [Appellant] was staying.

- 16 -

TCO at 8-9. Additionally, during his trial testimony, Appellant admitted to signing the promissory note at V.G.'s request. Appellant also returned to the United States from the Dominican Republic after L.C.'s family had received the promissory note. The jury could infer from this timing that Appellant returned, because he believed that L.C. would retract her accusations against him now that the bribe had been received. All of these factors coalesce to establish a conspiratorial agreement beyond a reasonable doubt – specifically, that Appellant and V.G. agreed to intimidate L.C. and her family into retracting their report to law enforcement and withholding any additional information from law enforcement. *See* 18 Pa.C.S. § 903(a); ***Thomas***, 65 A.3d at 943.

Accordingly, the evidence was sufficient to support Appellant's convictions for witness intimidation and conspiracy. Consequently, Appellant's final issue merits no relief.

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2018

- 17 -