J-S52027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SUYNGOV SEING | : | |
| | : | |
| Appellant | : | No. 682 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013693-2014

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                 **FILED:  FEBRUARY 22, 2021**

Suyngov Seing (Appellant) appeals from the judgment of sentence imposed in the Philadelphia County Court of Common Pleas following his jury conviction of rape of a child[1] and related offenses for the repeated sexual assault of his then-minor daughter, E.S. (Victim).  Appellant's issues on appeal focus on the trial court's ruling permitting the Commonwealth to play for the jury a prior video interview with Victim.  He asserts the interview was not admissible as a prior consistent statement pursuant to Pennsylvania Rule of Evidence 613(c) and included prejudicial hearsay statements, and that the trial court erred by refusing to grant a mistrial.  For the reasons below, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(c).

The trial court summarized the facts presented during Appellant's jury trial as follows:

[Victim] is Appellant's biological daughter. At trial, [Victim] testified to a continual pattern of abuse by Appellant, which began when [she] was three years old and ended when she was ten. [Victim] testified that the first incident that she remembered was when Appellant forced her to watch a pornographic movie, which depicted a women giving men oral sex, and then told her to do what she saw on the video. Appellant then forced [Victim] to perform oral sex on him. [Victim] explained that forcing her to perform oral sex was the "most common" way that Appellant sexually abused her: it happened "whenever he got the chance" in the bedrooms, bathrooms, living room, and basement. There were also several incidents in which Appellant licked her breasts and groped her over her clothes. When [Victim] was in kindergarten, her father also began to frequently have vaginal sex with her. [Victim] testified that Appellant would lay her on the bed and vaginally penetrate her with his hands and penis. Appellant never wore a condom and would ejaculate into a paper towel. Appellant repeated this conduct "whenever he could," "hundreds of times" and at some points this was "around once a week, if not more[.]"

At trial, [Victim] testified that she has difficulty putting memories in a timeline. She testified that "a lot of [her] memories are just chunks of memories." She testified that she doesn't remember a lot of her childhood and that many of her memories before ten years old are not entirely clear in her head. On cross-examination, [Victim] was extensively questioned about having problems with memories from ages ten to seventeen. The defense drew attention to the fact that [Victim] suffered seven concussions in seven years and that she "doesn't remember a lot of [her] childhood." Defense counsel also asked her about inconsistencies with what [she] reported during a [Philadelphia Children's Alliance (PCA)] interview, at a preliminary hearing, and during trial.

Following [Victim's] cross[-]examination, the Commonwealth moved to admit a video recording of [Victim's] interview with [PCA], pursuant to Pa.R.E. 613. Defense counsel objected, arguing that the video was not an admissible prior consistent statement and the proffered evidence was cumulative. The Commonwealth countered:

> Your Honor, my response to that would be that during Counsel's cross[-]examination of the complainant, he asked the complainant questions like have you ever said that before. He was highlighting inconsistencies, perhaps, in her testimony today versus when she spoke about this to law enforcement. I think he specifically said, Did you ever tell SVU or PCA about that. And her answer directly related to telling SVU and PCA. Now, that has been called into question. I think that the fact finder needs to be able to see what she has said at prior – at her prior statement based on Counsel's questioning.

This court agreed with the Commonwealth and admitted the video.

> Two people testified to learning that [Victim] was abused prior to her disclosure to authorities or prior to a head injury.[2] Saovleak "Noury" Khim, a friend to [Victim] during middle school and high school, testified that she learned of [Victim's] abuse prior to any head injury that [Victim] suffered. At thirteen years old, while in the eighth grade, Saovleak told [Victim] about being molested and [Victim] responded "that someone in her family sexually abused her when she was younger." [Victim] did not provide details or tell her who abused her. The following year, in the ninth grade, [Victim] told Khim that she kept having flashbacks of her sexual abuse, that she could not forget about it, did not know what to do about it, and that [Victim] would text her at night that she was having trouble sleeping because of it.

> Camile Coleman testified that she was [Victim's] roommate at Fairmount Behavioral Hospital in September of 2014. Following [Victim's] discovery of her impending discharge, [she] disclosed to Camile that "she was repeated[ly] assaulted by someone within her family." Camile testified that [Victim] told her that she was to watch a pornographic video and that she was raped and molested.

Trial Ct. Op., 12/31/19, at 2-4 (record citations omitted).

---

[2] Contrary to the trial court's finding, the record reveals that Victim told only one witness about the abuse before she suffered a series of head injuries beginning at age 14 — Savokeak "Noury" Khim. **See** N.T., 8/15/18, at 85 (Victim's first concussion was at age 14).

- 3 -

Victim did not report the abuse to police until she was 17 years old, while she was hospitalized at Fairmount Behavioral Health following a suicide attempt. On September 19, 2014, the Department of Human Services hotline received an anonymous call reporting that Victim had been sexually abused by her father. *See* Affidavit of Probable Cause, 10/30/14, at 2. The Philadelphia Police met with Victim's mother and Appellant on September 26, 2014. *Id.* Victim's mother related that Victim first told her about the abuse on September 20th. *Id.* On September 30, 2014, Victim submitted to a forensic interview with PCA. *Id.* During that interview, Victim reported that Appellant had sexually abused her from the ages of three to 10. *Id.* It was this interview that was videotaped and played at trial over Appellant's objection.

Appellant was subsequently charged with numerous sexual offenses. The case proceeded to a jury trial. On August 20, 2018, the jury found him guilty of rape of a child, involuntary deviate sexual intercourse with a child, indecent assault (less than 13 years of age), incest, endangering the welfare of a minor, corruption of minors, and unlawful contact with a minor.[3] On February 8, 2019, Appellant was sentenced to an aggregate term of 25 to 50

---

[3] 18 Pa.C.S. §§ 3123(b), 3126(a)(7), 4302(a), 4304(a)(1), 6301(a)(1)(ii), 6318(a)(1).

years' imprisonment, followed by 14 years' probation.[4]  Appellant is also required to register as a Tier III sexual offender for his lifetime.  **See** 42 Pa.C.S. § 9799.14(d)(2) (Tier III sexual offenses), 9799.15(a)(3) (individual convicted of a Tier III sexual offense shall register for life); N.T. 2/8/19, at 49.  This timely appeal followed.[5]

Appellant presents three, related issues on appeal:

1.  Did the lower court not err by allowing a video interview of [Victim], produced by [PCA], to be played before the jury when the interview was not admissible as a prior consistent statement?

2.  Did the lower court not err by allowing a video interview of [Victim], produced by [PCA], to be played before the jury when the interview contained prejudicial hearsay statements, including, but not limited to a statement by [Victim] that [she] had heard from her mother that when her mother told [Appellant] of the allegations against him [Appellant] said that he would kill himself?

3.  Did the lower court not err by refusing to grant a mistrial after the admission of a hearsay statement, made during the playing of [Victim's] video interview from [PCA], that [Victim] had heard from her mother that when her mother told [Appellant] of the allegations against him [Appellant] said that he would kill himself

---

[4] Specifically, the trial court imposed consecutive terms of 20 to 40 years' imprisonment for rape of a child, 2½ to five years for incest, 2½ to five years for corruption of minors, and two 7-year probationary terms for indecent assault and endangering the welfare of minors.  The trial court imposed the concurrent sentences of 20 to 40 years for IDSI and 10 to 20 years for unlawful contact with a minor.

[5] On March 11, 2019, the trial court ordered Appellant to file a concise statement of errors complained of on appeal within 30 days.  Appellant complied with the court's directive and filed a concise statement that was date-stamped as received on April 10, 2019, although it was not docketed until the following day.  **See** Appellant's Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b), 4/10/19.

and a curative instruction was insufficient to undo the prejudice endured by [Appellant] when the jury heard the statement?

Appellant's Brief at 3.

In his first issue, Appellant contends the trial court erred when it admitted, as a prior consistent statement, Victim's video interview conducted by PCA. Appellant's Brief at 7. He agrees a witness's prior consistent statement is admissible to rebut a charge that, *inter alia*, the witness has a faulty memory. ***See id.*** at 8, citing Pa.R.E. 613(c). However, Appellant emphasizes that, under those circumstances, the prior statement is admissible "**only if** [it] is made **before** the faulty memory existed." Appellant's Brief at 9. Here, Appellant concedes he "attack[ed] the memory of [Victim] based on a series of concussions that she suffered between the age of ten, when the alleged conduct was reported by her to have stopped, and the age of seventeen, when she ma[d]e the video-taped statement at . . . PCA." ***Id.*** at 8-9. Nevertheless, Appellant asserts the trial court "mistakenly concluded that the incidents which led to [Victim's] faulty memory[ — the series of concussions —] occurred **after** the video-taped statement was taken." ***Id.*** at 9. ***See also*** Trial Ct. Op. at 8. Accordingly, he concludes the trial court erred in admitting the prior consistent statement under Rule 613(c). Furthermore, Appellant insists the error was not harmless. Appellant's Brief at 9.

Our review of a trial court's evidentiary rulings is well-established:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow. To

constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Bond***, 190 A.3d 664, 667 (Pa. Super. 2018) (citation omitted).  "Error is harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict."

***Commonwealth v. Lively***, 231 A.3d 1003, 1009 (Pa. Super. 2020) (citations omitted).  Moreover, we note an appellate court may affirm a trial court's ruling on any basis, and "may affirm a judgment based on harmless error even if such an argument is not raised by the parties."  ***See Commonwealth v. Allshouse***, 36 A.3d 163, 182 (Pa. 2012); ***Commonwealth v. Wilcox***, 174 A.3d 670, 674 n.4 (Pa. Super. 2017).

The admission of a witness's prior consistent statement is governed by Pennsylvania Rule of Evidence 613(c), which provides, in pertinent part:

> **(c) Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c)(1)-(2).  Thus, pursuant to subsection (c)(1), the prior statement must have been made **before** the alleged "fabrication, bias, improper influence or motive, or faulty memory."  Pa.R.E. 613(c)(1).  ***See***

- 7 -

*Commonwealth v. Baker*, 963 A.2d 495, 505 (Pa. Super. 2008) (concluding video of child victim's interview with forensic pediatrician was admissible as prior consistent statement when defense "insinuated" that victim's trial testimony was "fabricated" by Commonwealth and victim's mother).

In the present case, the trial court determined the PCA interview was admissible under Rule 613(c)(1). **See** Trial Ct. Op. at 5-8. The court emphasized defense counsel's cross-examination of Victim, during which counsel "strongly implied that [Victim] had a faulty memory." **Id.** at 6. Counsel questioned Victim about her history of concussions and continuous medical care for them. **See id.** at 7. The trial court also noted defense counsel's questioning regarding the "inconsistencies" between Victim's trial testimony in August of 2018, and her testimony at the preliminary hearing conducted in December of 2014. **Id.** at 7-8. The court concluded counsel's cross-examination "implied charges of fabrication and faulty memory" such that the PCA interview was admissible as a prior consistent statement. **Id.** at 8. The court opined:

> Under Rule 613, a prior consistent statement may be admitted after a witness is expressly or impliedly accused of fabrication or faulty memory, and the [prior consistent statement] must be made before the charge of fabrication or faulty memory existed. Here, [Victim] gave her PCA interview when she first disclosed the abuse, sufficiently before trial, and sufficiently before enduring countless attacks and before defense counsel implied she had a poor memory.
>
> The statements recorded . . . during the PCA interview were made before [Victim's] head injuries and were consistent with the other testimony that she gave. This court admitted the video because of the degree of impeachment and the extent and nature

of cross-examination were determined to warrant the statement's admission. Thus, [Victim's] PCA video [interview] was an admissible prior consistent statement under Rule 613[.]

*Id.*

To the extent the trial court determined the PCA interview was admissible because it occurred **before** Victim suffered a series of concussions, we agree with Appellant that this finding is controverted by the record. Victim testified Appellant began sexually abusing her when she was age "three or four," and "stopped around the age of ten." **See** N.T., 8/15/18, at 39, 89. However, Victim stated she did not receive her first concussion until she was 14 years old, and then had seven more concussions over the next seven years.[6] **See id.** at 85. Victim was interviewed by PCA on September 30, 2014, when she was 17 years old. **See id.** at 36, 144. Therefore, her PCA interview occurred **after** she suffered a series of concussions. Accordingly, because the prior consistent statement was not made before the incidents that resulted in her faulty memory, we agree the statement was not admissible under Rule 613(c)(1).

Nevertheless, the Commonwealth insists Victim's prior consistent statement was admissible under Rule 613(c)(2). **See** Commonwealth's Brief at 12. We agree. **See Wilcox**, 174 A.3d at 674 n.4 ("This Court is not bound by rationale of a trial court and may affirm the trial court's order on any basis.") (citation omitted).

---

[6] Victim did not identify the date of her last concussion, or whether she suffered any after she provided the PCA interview.

Subsection (c)(2) permits the introduction of a witness's prior consistent statement if:  (1) "if the opposing party is given an opportunity to cross-examine the witness about the statement[; (2)] the statement is offered to rebut an express or implied charge of . . . having made a prior inconsistent statement, which the witness has denied or explained[; and (3)] the consistent statement supports the witness's denial or explanation."  Pa.R.E. 613(c)(2).  Here, Appellant does not dispute he had the opportunity to cross-examine Victim regarding the statement.  Furthermore, we agree with the trial court that defense counsel's cross-examination of Victim "implied charges of fabrication and faulty memory."  **See** Trial Ct. Op., at 8; N.T., 8/15/18, at 83-87, 89-93, 101-05.  In particular, defense counsel emphasized that Victim made several claims at trial that contradicted her statement to police and her testimony at Appellant's preliminary hearing four years earlier.  **See** N.T., 8/15/18, at 89-93 (Victim testified at trial that some of the abuse over the years occurred at her cousin's house, but at preliminary hearing testified that only the first incident occurred there); 101-02 (Victim testified at trial that her mother "walked in" during one assault, but Victim never reported this to police); 104-05 (Victim testified at trial that her brother opened bedroom door after an assault, but during the preliminary hearing stated her brother was present during an assault).

Furthermore, at trial Victim attempted to explain each allegedly inconsistent statement.  **See** N.T., 8/15/18, at 83-84 (explaining her memories of childhood are "very isolated" and "just chunks of memories");

- 10 -

92-93 (explaining "[a] lot more memories [had] come back to " her over the four years since she first reported the abuse); 101-02 (explaining the incident her mother walked in on was "one of those memories that came back to" her); 104-05 (explaining she must have misheard question at preliminary hearing because she never "recall[ed her brother] being in the room").  Therefore, the prior consistent statement — her videotaped interview with PCA — was admissible under Rule 613(c)(2) to support her explanations regarding her prior inconsistent statements at the preliminary hearing and to police.  **See Commonwealth v. Harris**, 852 A.2d 1168, 1175-76 (Pa. 2004) (witness's prior consistent statement to police, identifying appellant as shooter, was properly admitted pursuant to Rule 613(c)(2); although statement to police postdated witness's statement to 911 operator where witness did not identify appellant as shooter, rehabilitation under subsection (c)(2) does not require consistent statement be made before inconsistent statement).  Accordingly, we conclude the trial court did not err in admitting Victim's PCA interview as a prior consistent statement under Rule 613(c)(2).

Next, Appellant contends the trial court erred when it permitted the jury to hear inadmissible hearsay statements contained in Victim's PCA interview.  Appellant's Brief at 9.  Specifically, during the interview, Victim stated her mother told her that, when Appellant was confronted with the allegations, he said he would kill himself.  **See** N.T., 8/15/18, at 146.  Appellant asserts this statement was offered to prove he "felt he was guilty" and "tip the scale in favor of conviction."  Appellant's Brief at 13.  Moreover, Appellant argues

admission of the statement violated his constitutional right to confront his accusers pursuant to ***Crawford v. Washington***, 541 U.S. 26 (2004). ***See id.*** at 10.

Here, after Victim's video interview was played for the jury, Appellant's counsel objected to hearsay statements that were made by Victim during the interview. ***See*** N.T., 8/15/18, at 145-46. Specifically, counsel argued that when Victim was asked whether her mother ever spoke to Appellant about the allegations, Victim responded:

> Yes, my mom went to see him . . . and spoke to him, and his response was along the lines of, I just want to see her one more time, and then I'll kill myself.

***Id.*** at 146. Counsel averred that Appellant's statement to Victim's mother "is tantamount to an admission" and moved for a mistrial. ***Id.*** at 146. The Commonwealth responded by offering to call Victim's mother during the Commonwealth's case "to allow her to . . . confirm or deny the existence of those conversations."[7] ***Id.*** at 147. The Commonwealth also agreed to a curative jury charge, instructing the jury "not to consider anything that was [stated] outside [Victim's] presence." ***Id.*** at 147. The trial court denied the motion for a mistrial, and provided the following curative instruction, which was agreed to by both parties:

---

[7] The Commonwealth did, indeed, call Victim's mother as a witness during its case-in-chief, and Appellant did **not** ask her about the alleged out-of-court statement Victim referred to in her PCA interview. ***See*** N.T., 8/16/18, at 27-39.

Ladies and gentlemen of the jury, you heard in the PCA video . . . that [Victim] discussed a conversation that occurred between her mother and her brother, and between her mother and her father outside of her presence. You are not to consider that as evidence and not to consider that when you are evaluating the evidence in this case.

*See id.* at 148, 150-51. Further, during its final charge to the jury, the court reiterated:

You have heard evidence that [Victim] made a statement on an earlier occasion that was consistent with her testimony. This evidence may be consider[ed] by you for one purpose only, that is, to help you judge the credibility and weight of the testimony give my [Victim] as a witness in this trial.

You may not regard evidence of a prior consistent statement as proof of the truth of any matter asserted in that statement.

N.T., 8/16/18, at 165.

With this background in mind, we note hearsay is a statement the declarant makes out of court that is offered in evidence "to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1)-(2). Out of court statements that are offered for another reason, however, are not hearsay. *Commonwealth v. Puksar*, 740 A.2d 219, 225 (Pa. 1999). Moreover, the Pennsylvania Rules of Evidence list several exceptions to the hearsay rule, including a statement by an opposing party. *See* Pa.R.E. 803(25). When a trial court instructs a jury to disregard a statement, we presume the jury heeded the court's instruction. *See Commonwealth v. Walter*, 119 A.3d 255, 267 (Pa. 2015).

We conclude no relief is warranted. First, we note Appellant's argument regarding his confrontation rights fails. In *Crawford*, the United States

Supreme Court held that "testimonial statements of a witness who did not appear at trial" were inadmissible "unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53–54. Here, the layered hearsay statement contained in Victim's PCA interview was a statement by Victim's mother to Victim, relaying a statement made by Appellant to Victim's mother. Because Victim's mother testified at trial, Appellant had the opportunity to cross-examine her regarding the out of court statement. Thus, there was no *Crawford* violation. *See id.* at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

Furthermore, as the trial court explains in its opinion, the statement by Appellant to Victim's mother is not excluded by the rule against hearsay "because it is the statement of a party opponent." *See* Trial Ct. Op. at 10. Pursuant to the Pennsylvania Rules of Evidence, a statement "offered against an opposing party" that was, *inter alia*, "made by the party in an individual capacity," is "not excluded by the rule against hearsay regardless of whether the declarant is available as a witness." Pa.R.E. 803(25)(A). Thus, even if the trial court did not instruct the jury to disregard this statement — which it did — Appellant's hearsay argument has no merit.

Lastly, Appellant contends the trial court abused its discretion when it failed to grant his request for a mistrial following the introduction of his purported statement to Victim's mother that he intended to kill himself.

Appellant's Brief at 14. He insists "[t]he only reasonable inference the jury could draw from this statement is that the professor of it is guilty of the alleged act" and "[n]o curative instruction . . . could ever un-ring that bell[.]" *Id.*

Our review of a trial court's ruling denying a motion for mistrial is well-settled:

> We review the trial court's decision to deny a mistrial for an abuse of discretion. A mistrial is necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice.

*Commonwealth v. Bedford*, 50 A.3d 707, 712–13 (Pa. Super. 2012).

In the present case, after Appellant objected to the hearsay statement in the video, the trial court instructed the jury "not to consider" the statement by Victim's mother. *See* N.T., 8/15/18, at 151. Counsel for Appellant "agreed" to the wording of the instruction, and made no further objection. *See id.* at 150-51. We presume the jury followed the court's instruction. *See Walter*, 119 A.3d at 267. Moreover, the court later instructed that it should consider the Victim's PCA interview **only** to assess her credibility and it was not to consider her prior statement "as proof of the truth of any matter asserted in that statement." N.T., 8/16/18, at 165. Appellant fails to explain why these cautionary instructions were insufficient to overcome any prejudice

resulting from purported hearsay statements in the PCA interview.[8]  Thus, no relief is warranted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/22/21

---

[8] Appellant's sole argument appears to be that the **only** inference the jury could draw from Appellant's alleged statement to Victim's mother is that he was guilty of the offense.  ***See*** Appellant's Brief at 14.  However, it would also be reasonable to assume Appellant threatened to kill himself because he recognized the damage was already done, that is, even fabricated allegations of sexual abuse would destroy his relationship with his daughter, as well as his life.